**REINSURANCE COMPANY OF AMER-ICA, INC., Plaintiff-Appellee,**

v.

**ADMINISTRATIA ASIGURARILOR de STAT (ADMINISTRATION OF STATE INSURANCE), Defendant-Appellant.**

No. 86–1590.

United States Court of Appeals, Seventh Circuit.

Argued Nov. 12, 1986.

Decided Jan. 6, 1987.

Paul V. Esposito, Lewis, Overbeck & Furman, Chicago, Ill., for defendant-appellant.

Michael P. Connelly, Connelly & Mustes, Chicago, Ill., for plaintiff-appellee.

Before POSNER, COFFEY, Circuit Judges, and PELL, Senior Circuit Judge.

PELL, Senior Circuit Judge.

Defendant-appellant Administratia Asigurarilor de Stat (AAS), an insurance entity owned by the government of Romania, appeals from the denial by the district court of its motion for an extension of time in which to file a notice of appeal made pursuant to Fed.R.App.P. 4(a)(5). AAS contends that the district court abused its discretion in denying the motion to extend the filing deadline. For the reasons set forth below, we affirm the decision of the district court and find no abuse of discretion on its part.

## I.

The rather attenuated chronology of the facts of this case are well-known to the parties, therefore, we pause, only briefly, to summarize the most salient details. Plaintiff Reinsurance Corporation of America (RCA) sued AAS for damages claiming that RCA was owed money pursuant to certain contracts of insurance to which AAS and RCA were parties. The district court granted RCA's motion for summary judgment on July 9th, 1985, and requested proof from RCA of its damages. Although AAS was represented by counsel, both locally and by lead counsel in New York, AAS at no time contested RCA's motion for summary judgment or its allegation of damages. Following AAS's failure to appear at a final status hearing, called to allow both parties to submit proposed judgment orders, RCA's unopposed order was adopted and judgment entered, on November 27th, against AAS for $337,597.00. Notice of this judgment was mailed to all counsel of record.

Four days after it was due on December 27th, 1985, AAS filed its notice of appeal on December 31st.[1] RCA moved to dismiss AAS's appeal on grounds of untimeliness and AAS filed a motion seeking an extension of time—from December 27th to December 31st—in which to file its notice of appeal. In its motion to extend the filing date, AAS stated: (i) that it did not learn of the entry of a final judgment in its case until December 18, 1984 and (ii) that an uncontrollable mail delay occasioned by the holiday season prevented the timely filing of the notice of appeal. In fact, upon further inquiry, the district court learned that, on or about December 2nd, AAS had been told by a business contact in the United States about a partial summary judgment entered against AAS in this case in April 1984. Frustrated by the failure of its counsel of record to apprise AAS truthfully of the status of its case, AAS contacted a New York based acquaintance of its offi-

cers and requested him to investigate the actual current status of the AAS–RCA litigation. AAS's emissary, Mr. Herescu, contacted RCA's counsel by phone on December 5th and requested a copy of the district court's November 27th order which was received by Herescu from Chicago on December 10th. Herescu then sent a copy of the judgment to AAS in Romania via *regular mail* on December 10th and AAS acknowledged receipt of the judgment as of December 20th. Finally, on December 21st, AAS called Herescu in New York and instructed him to file a notice of appeal which was ultimately prepared and sent to Chicago three days later on December 24th, Christmas Eve, and which arrived at the district court clerk's office on December 31st.

On March 13th, 1986, the district court denied AAS's motion to extend time. In his order, Judge Grady suggested that while he would likely have granted the motion initially, the inconsistency between the affidavits originally supporting AAS's motion and later, clarifying affidavits filed by AAS left the court with the impression that AAS had had sufficient notice of the court's judgment to negate any possible claim of "excusable neglect." In relevant part, the district court found:

> Defendant missed the appeal deadline by only four days, and this court would ordinarily take an indulgent view of any reasonable excuse, given the fact that the notice was mailed four days before the deadline. But defendant, through its attorney, Mr. Herescu, has misrepresented the facts. Whether the misrepresentation was intentional or not, the fact is that Mr. Herescu's initial affidavit of January 23, 1986, gave no hint of the fact that, as conceded by his later affidavit, he knew of the judgment as early as December 5. Assuming that Mr. Herescu's status as defendant's attorney did not crystallize until December 18, so that his knowledge acquired on December 5

---

1. AAS's original attorney also filed a notice of appeal on December 31st which this court, on its own motion, dismissed as duplicative.

cannot be attributed to defendant until December 18 when he actually informed defendant in a telephone conversation that a judgment had been entered on November 27, still, it is clear that the defendant knew of the judgment no later than December 18. It had nine days from that date to get its notice of appeal on file. It had Mr. Herescu in New York and local counsel in Chicago. Everyone had access to telephones, and there was no need to rely on the mail. A notice of appeal is a simple document, as is illustrated by the five line notice of appeal that was filed on December 31 ... We see no basis for finding that the failure to meet the December 27 deadline was because of excusable neglect or that there is good cause for extending the time for filing.

## II.

■ The timely filing of a notice of appeal is, of course, mandatory and jurisdictional. *Browder v. Director, Illinois Dept. of Corrections,* 434 U.S. 257, 98 S.Ct. 556, 54 L.Ed.2d 521 (1978); *United States ex rel. Leonard v. O'Leary,* 788 F.2d 1238, 1239 (7th Cir.1986). Pursuant to Fed.R. App.P. 4(a)(1) appellant should have filed its notice of appeal with the district court by December 27, 1985. Extensions of Rule 4(a)(1)'s 30–day time limit are governed by Fed.R.App.P. 4(a)(5) which states:

> The district court, upon showing of excusable neglect or good cause, may extend the time for filing a notice of appeal
> ...

This discretionary authority to make a determination as to the existence of "excusable neglect" and/or "good cause" is not to be disturbed on appeal unless there has been a clear abuse of discretion by the district court. *Gooch v. Skelly Oil Co.,* 493 F.2d 366, 368 (10th Cir.1974), *cert. denied,* 419 U.S. 997, 95 S.Ct. 311, 42 L.Ed.2d 270 (1974); *Chipser v. Kohlmeyer & Co.,* 600 F.2d 1061, 1063 (5th Cir.1979); *In re Cosmopolitan Aviation Corp.,* 763 F.2d 507, 514 (2d Cir.1985). Along these same lines, the Seventh Circuit has, on a prior

occasion, concluded that wide latitude should generally be accorded a district court in determining excusable neglect. *Files v. City of Rockford,* 440 F.2d 811, 816 (7th Cir.1971).

Predictably, Fed.R.App.P. 4(a)(5) does not define what constitutes excusable neglect or good cause but a brief review of Rule 4's pedigree suggests that "excusable neglect" was intended to be narrowly construed. The predecessor of present-day Rule 4 was Fed.R.Civ.P. 73, adopted in 1937 to expedite appeals and guard against dilatory tactics. In 1946, Rule 73 was amended to include the present 30–day time limit for filing appeals as well as the first mention of "excusable neglect" as a ground for extending the new 30–day appeal period. The amendment provided, "... except that upon a showing of excusable neglect based on a failure of a party to learn of the entry of the judgment the district court in any action may extend the time for appeal...." *See* 9 Moore's Federal Practice ¶ 203.21 *et seq.; Files v. City of Rockford,* 440 F.2d 811 (7th Cir.1971). A 1966 amendment to Rule 4 deleted the phrase "based upon a failure of a party to learn of the entry of the judgment" for the purpose of, according to the committee note:

> "empower[ing] the district court to extend the time upon a showing of excusable neglect of any kind. In view of the ease with which an appeal may be perfected, no reason other than failure to learn of the entry of judgment should ordinarily excuse a party from the requirement that the notice be timely filed. But the district court should have authority to permit the notice to be filed out of time in extraordinary cases where injustice would otherwise result."

*Id.*

The history of the "excusable neglect" standard thus clearly indicates that, with the exception of "extraordinary cases where injustice would otherwise result," few circumstances will ordinarily qualify

under the excusable neglect rubric.[2] An apparent exception to this otherwise strict application of the 30–day appeal period can be found in a relatively limited number of cases whose facts evidence what the Supreme Court has termed "unique circumstances." *See Harris Truck Lines, Inc. v. Cherry Meat Packers, Inc.*, 371 U.S. 215, 83 S.Ct. 283, 9 L.Ed.2d 261 (1962); *Thompson v. Immigration and Naturalization Service*, 375 U.S. 384, 84 S.Ct. 397, 11 L.Ed.2d 404 (1964). Examination of "unique circumstances" cases, however, reveals that these cases were decided on what amounts to an estoppel theory and not upon any stated policy of leniency or liberality in applying the excusable neglect standard. For example, in both *Harris Trucking* and *Thompson, supra,* the Supreme Court held that the petitioner's justifiable and ultimately detrimental reliance on a district court ruling granting the petitioner an extension of time in which to appeal amounted to "unique circumstances" when the court of appeals later reversed the district court, leaving petitioner without recourse to either the expired 30–day time period or the extension of time the district court had granted. In the absence of such unique circumstances as those cited above, or the absence of evidence that a party failed excusably to learn of the entry of a judgment, this court will continue to insist that notices of appeal are timely filed.

In the instant case, AAS contends that the facts demonstrate (i) that it failed to learn of the district court's judgment in a timely fashion and (ii) that, in any event, Herescu mailed the notice of appeal from New York to Chicago in a timely and reasonable manner and that an uncontrollable delay in the mails, not neglect or indifference, caused the tardy arrival of the notice of appeal. Each of appellant's contentions will be considered in turn.

### A. *AAS failed to learn of the district court's judgment in a timely fashion.*

Taking as true the events related in Herescu's second supporting affidavit, it is difficult to conceive of how AAS can claim to have been without adequate time to file a timely notice of appeal. As early as December 2nd, AAS acknowledges having been told by a United States business contact that a partial judgment had been entered against it. On December 5th, Herescu, at the suggestion of AAS, contacted RCA's counsel[3] and learned from him that a judgment against AAS had been handed down by the district court on November 27th for approximately $339,000.00. Herescu received a copy of the judgment from RCA's counsel on December 10th and rather than telephoning AAS with the information, sending the judgment air express or via telefax, Herescu sent the judgment to AAS in Romania via *regular mail.* Herescu knew the judgment (for $337,597.00) had been entered on November 27th and that the 30–day appeal period was running, yet the slowest imaginable means of getting the judgment to Romania was utilized.

It is uncontroverted that on December 18th, *nine full days* before the December 27th appeal filing deadline, AAS learned of the existence of the district court's final judgment from its American business contact. On December 20th, AAS received the copy of the judgment sent by Herescu and the very next day, the 21st, AAS requested via telephone (a means of communication used all too sparingly throughout this case) that Herescu file a notice of appeal on AAS's behalf. Herescu then waited from Saturday, December 21st

---

**2.** The Fifth Circuit has unequivocally stated that the "excusable neglect standard" of Fed.R.App.P. 4(a)(5) is intended to be a "strict one." *Chipser v. Kohlmeyer & Co.,* 600 F.2d 1061, 1063 (5th Cir.1979).

**3.** Much is made by AAS of the fact that Herescu was not authorized to act as attorney on behalf of AAS until December 21st and thus any knowl-

edge of the judgment possessed early in December by Herescu cannot, AAS argues, fairly be imputed to AAS. Our holding that AAS had ample time from when it first learned conclusively of the judgment—on or about December 18th—to file a timely notice of appeal, renders immaterial the point at which AAS actually became Herescu's client.

until Tuesday, December 24th—Christmas Eve!—before drafting and sending the five line notice of appeal from New York to the district court in Chicago via certified mail, return receipt requested. AAS's assertion that its failure to learn of the judgment from its original attorney of record might well be deemed "excusable"; but the casual manner in which AAS and Herescu treated the quickly lapsing 30–day appeal period for the $337,597.00 judgment is, in our view, clearly *in* excusable. Were we to allow the circumstances alleged here to constitute "excusable neglect", Fed.R. App.P. 4 would effectively be rendered meaningless. AAS knew of the judgment against it in ample time, even assuming December 18th marks AAS's actual knowledge of the judgment, to allow the communications technologies of the 20th century to deliver its notice of appeal to the district court in a timely fashion.

### B. *AAS mailed the notice of appeal from New York to Chicago in a timely and reasonable manner.*

■ AAS's second argument maintains, in effect, that regardless of the point in time at which it first learned of the district court's judgment, AAS acted reasonably in allowing four full days—December 24th to the 27th—for its notice of appeal to reach Chicago. However, placing a critically important letter in the mail sometime on the day before Christmas with the expectation that it will arrive in Chicago in anywhere near the normal two to three days is, in our opinion, only arguably reasonable but certainly risky—especially at what everyone recognizes is the busiest mailing time of the year. AAS also claims that Fed.R. Civ.P. 6(e), allowing an extra three days when documents are served by mail, was intended to establish presumptively that mail reaches its intended destination in three days. Such an argument is clearly specious. Finally, AAS argues that the fact that it sent the notice of appeal via certified mail, return receipt requested, is evidence that it purposely chose an expeditious and more costly method of postal dispatch. Certified mail, return receipt re-

quested, in contrast to an overnight delivery service, is designed only to furnish a sender of mail with proof of its delivery, and it is in return for this assurance, not a promise of expedited delivery, that certified mail is more costly. The facts of this case, as admitted by AAS, clearly do not support the contention that it acted in a reasonable and responsible manner in sending its notice of appeal to Chicago and thus "good cause" is not furnished by blaming the postal service for AAS's inexplicable lack of foresight.

Finally, a word about AAS's assertion that the district court unfairly penalized it by imputing the "misrepresentations" contained in Herescu's original affidavit to AAS. AAS misses the point of the district court's opinion. The district court decision does not seek to punish AAS for the inconsistencies in Herescu's two affidavits; rather, as a result of the additional information disclosed in the second affidavit, the district court arrived at the conclusion that appellant's failure to have promptly learned of and acted upon the judgment—contrary to earlier indications—no longer appeared to have been "excusable". In any event, it seems unfair to us to ask RCA to atone for the lack of diligence, bordering on downright indifference, that could be fairly attributed both to Herescu and to AAS in the face of what both parties knew to be a substantial adverse judgment.

### III.

In the circumstances presented in this case—i.e., a $337,597.00 summary judgment entered against a presumably sophisticated commercial entity of a foreign government—we find the district court did not abuse its discretion by denying AAS's motion to extend the time for appeal in view of the extraordinarily casual manner in which AAS and its agent/attorney, Mr. Herescu, pursued the instant appeal. The rationale for insistence upon the timely filing of a notice of appeal is "the necessity for providing a precisely ascertainable point of time at which litigation comes to

an end," *Files, supra,* a departure from this laudable objective is in no way compelled by the facts of this appeal. Accordingly, the decision of the district court is

AFFIRMED.