William PEARSON, Plaintiff–Appellant,

v.

Michael A. GATTO, Thomas McWilliams, Major Schomig, and Michael O'Leary, Defendants–Appellees.

Nos. 90–2376, 90–2493.

United States Court of Appeals,
Seventh Circuit.

Argued April 23, 1991.

Decided May 23, 1991.

Kenneth N. Flaxman, Chicago, Ill., for plaintiff.

Neil F. Hartigan, Atty. Gen., Richard M. Carbonara, Asst. Atty. Gen., and Daniel N. Malato, Asst. Atty. Gen., Chicago, Ill., for defendants.

Before CUMMINGS, RIPPLE and MANION, Circuit Judges.

CUMMINGS, Circuit Judge.

William Pearson appeals the dismissal of his first amended complaint in which he sought to recover damages under 42 U.S.C. § 1983. The district court determined that his suit was time-barred under Illinois' two-year statute of limitations and that Pearson could not claim a disability entitling him to tolling of the statute.

### I.

Pearson, proceeding *pro se*, originally filed suit on November 13, 1985, alleging that defendant Major Schomig fired him from his prison job and, in a conspiracy with various Department of Corrections personnel, refused to follow the Inquiry Board's conclusion that he should be reinstated. Pearson alleged that defendants refused to reinstate him because he was black and because he had refused to join a gang as a condition of reemployment. According to Pearson, all of the employees of his work group were members of a gang, and Schomig refused to reinstate Pearson unless he also joined the gang. Pearson claimed that the defendants' actions violated his rights to due process and equal protection. The defendants moved for dismissal on the grounds that Pearson did not have a liberty interest in his job and failed to state a claim for a violation of his equal protection rights. The district court, in an order dated April 26, 1988, dismissed Pearson's due process claim, but ordered the defendants to answer Pearson's equal protection claim.

Upon receiving a copy of the judge's memorandum opinion, Pearson wrote the judge a letter, which reads in pertinent part:

I recived your memorandum opinion 4–29–88, and I was surprise to see that my complaint hadn't been amended. On June 10, 1986, I was attack during count time while in my bed with the door lock. The only peoples out was the officers and some how my door open and four to

five inmate roll on me in my cell with knives and steel pipes. The only reason I'm still alive today is because I fought hard for my life while hollowing for help, but no one came....

All this tacken place on June 10, and June 11,.... I recived close to forty stitches in my head alone and I was in great pain....

... L.T. Price, got me move to control seg, pending out come of the investigation. Judge, Major Schomig is a drug runner and a killer, that's how he control the gangs in Stateville. I want you to understand that I was attack because of this suit, and that if not for Lieutenant Price I would be a dead man and I can prove it in court.... I was told that I had two years to file and June 10, will be two years, and I don't know if the defendant is going to ask for an extension of time to file or not. But I'm asking for permission to amendment my complaint after the defendants answer my complaint.

... For those who try to rehabilitate in side prison wall catch hell from most of the staff and the inmate, and the staff treat you worse than the inmate. The gangs run Stateville and I can show you this, and if they want you the staff will set it up for you can be hit. I've never been to segregation in almost ten years, I've no major tickets, but I've been catching hell since 1981, because I refused to join a gang at a staff member request....

From this letter it appears that Pearson had attempted to add the retaliation allegations to his complaint at some point prior to the judge's April 26 order. The district court did not investigate why Pearson was "surprised" by the fact that the complaint was not amended, and instead simply treated Pearson's letter as a request to file an amended complaint. On June 3, the court granted the request to amend and sent a copy of Pearson's letter to the defendants. In addition, the court appointed counsel to represent Pearson and gave counsel until July 14, 1988 to file the amended complaint.

Appointed counsel did not file an amended complaint by July 14. In fact, counsel did not file the amended complaint until September 18, 1989, well over a year after he was appointed. Proceeding solely under a conspiracy theory, the amended complaint alleged that on June 10, 1986, Pearson was awakened by the sounds of a two-way radio and keys opening his cell and that he was then attacked by four inmates. The named defendants included the warden and members of the "Internal Investigation Unit." The complaint alleged that the warden referred the investigation of the attack to the Unit and that the investigators in the Unit conspired to "deprive plaintiff of the due course of justice ... by refraining from investigating plaintiff's allegations that a correctional officer had been involved in the beating." To this end, defendants purportedly omitted any reference to the radio and keys when writing reports about the incident or performing other investigative tasks. The last alleged act of the conspiracy occurred on October 22, 1986, when one of the defendants prepared a summary report of the investigation that omitted the crucial details. The result of this conspiracy, according to the complaint, was that Pearson was deprived of discovering the identity of the guard who opened his cell and was therefore unable to maintain a civil action against that guard to collect damages for his injuries.

In response, the defendants filed a motion to dismiss, presenting three grounds: (1) plaintiff's amended complaint, filed in September 1989, was barred by the two-year statute of limitations because his cause of action accrued in June 1986 (or at the latest October 1986) and he could not invoke any tolling provisions; (2) the allegations in the amended complaint did not relate back to the original complaint for purposes of the statute of limitations; and (3) plaintiff failed sufficiently to allege defendants' personal involvement in the alleged conspiracy. Plaintiff responded that the "imprisoned person" tolling provision, Ill.Rev.Stat. ch. 110, para. 13–211 (1984), was applicable to his case and that he suffi-

ciently alleged the involvement of all of the named defendants.

The district court granted defendants' motion to dismiss, applying Illinois' two-year statute of limitations and holding that the complaint was filed too late. Illinois' tolling provision for imprisoned persons did not apply to Pearson, the court held, because this tolling provision had been repealed and Pearson failed to file his amended complaint within a reasonable time after the statute's repeal. The court issued a final judgment on May 4, 1990.

Although the notice of appeal was due no later than June 4, 1990, plaintiff's appointed counsel failed to file a timely notice and instead filed on June 12, 1990 a motion for extension of time under Fed.R.App.P. 4(a)(5). On June 20, 1990, the court held a brief hearing on the motion and allowed counsel to file the notice of appeal on June 21, 1990. The court held that counsel's involvement in numerous court-appointed cases had caused him to miss the deadline and that this was good cause for extending the deadline to file the notice of appeal. Defendants timely filed a cross-appeal from the court's decision to permit the plaintiff's notice of appeal to be filed.

## II.

### A.

■ The first issue on appeal is whether there was a timely filed notice of appeal. If not, we need proceed no further, for a timely filed notice of appeal is jurisdictional. *Parke–Chapley Constr. Co. v. Cherrington*, 865 F.2d 907, 908–09 (7th Cir. 1989). It is undisputed that the notice of appeal was due in this case no later than 30 days after the entry of final judgment. Under Federal Rule of Appellate Procedure 4(a)(5), the district court, "upon a showing of excusable neglect or good cause, may extend the time for filing a notice of appeal upon motion filed not later than 30 days after the [original notice was due]." The advisory notes to Rule 4(a)(5) make clear that a request for an extension of time filed *before* the notice of appeal is due may be granted for good cause, but a request

for extension filed *after* the notice is due may only be granted under the higher excusable neglect standard. Fed.R.App.P. 4(a)(5) advisory committee's notes; *see also Parke–Chapley*, 865 F.2d at 909–10 (citing advisory notes); *Redfield v. Continental Casualty Corp.*, 818 F.2d 596, 601 (7th Cir.1987) (same).

We review a district court's decision to grant or deny a motion for extension of time to file a notice of appeal for abuse of discretion. *Reinsurance Co. of Am. v. Administratia Asigurarilor de Stat*, 808 F.2d 1249, 1251 (7th Cir.1987). In our evaluation, "wide latitude should generally be accorded a district court in determining excusable neglect," *id.*, and we look to the record as a whole to determine whether an abuse of discretion has occurred. *Redfield*, 818 F.2d at 601.

Courts interpret the excusable neglect standard narrowly. *Redfield*, 818 F.2d at 604; *Reinsurance*, 808 F.2d at 1251. "Excusable neglect is limited to an occurrence of unusual circumstances in which failure to grant an extension would result in injustice, such as the failure to learn of the entry of judgment." *Parke–Chapley*, 865 F.2d at 911. Other grounds include " 'uncontrollable delays in the delivery of mail, unpredictable events that affect the delivery of the notice of appeal to the clerk, unpredictable events that affect the feasibility of appeal, and plausible misconstructions, but not mere ignorance, of the law or rules.' " *Id.* (quoting *Redfield*, 818 F.2d at 602). Reliance on an incorrect representation of the court regarding the proper filing deadlines has also been excused. *See Reinsurance*, 808 F.2d at 1252.

■ Defendants argue that the district court erred in allowing the notice to be filed late. Counsel's justification in this case for failing to meet the filing deadline was that "an internal docketing error ... escaped detection because counsel was over-committed to court-appointed cases." The district court accepted this justification as "quite understandable and altogether credible," given the large number of cases to which the court had appointed him. Noting that the hearing was specifically

held to create a record for appeal, the court concluded: "I find that there is good cause for extending the time for the filing of this appeal, and for that reason the motion is granted." According to the defendants, the district court mistakenly applied the lower good cause standard.[1] Simple negligence of counsel, defendants contend, is insufficient to meet the proper excusable neglect standard. While negligence of counsel generally does not constitute excusable neglect, *see, e.g., Files v. City of Rockford,* 440 F.2d 811, 815 (7th Cir.1971) (" 'heavy work load of counsel that caused him to overlook the time for appeal does not constitute excusable neglect' ") (quoting 9 *Moore's Federal Practice* ¶ 204.13[1] ), it is also true that "[t]he good faith behavior of counsel has ... always been an important factor supporting a finding of excusable neglect." *Redfield,* 818 F.2d at 601. This case represents more than a simple overcommitment of counsel to other cases. Counsel's overcommitment was due to what can fairly be described as an excess of public service and altruism, while cases involving an overcommitment to paying clients are concerned with the attorney's mismanaged ambition or desire for financial gain. The district court judge went out of his way to emphasize that counsel was involved in "extensive pro bono activity," that he had been appointed by different judges to "very difficult cases," and that he "labor[ed] in these cases ... for no compensation and at great sacrifice of time, energy, and obviously, money."[2] Reversing the district court's decision would result in a great injustice to Mr. Pearson. *See Parke–Chapley,* 865 F.2d at 912. Through no fault of his own, plaintiff would see his colorable claim lost on the mistake of an attorney who was appointed to assist him rather than sink him. Under the unique circumstances of this case, we therefore conclude that the district court did not abuse its discretion in permitting the late filing of the notice of appeal.

### B.

Pearson argues that the district court erred in not applying the "imprisoned persons" tolling provision to his case.[3] When Pearson's cause of action accrued in June (or at the latest October) 1986, Illinois tolled the statute of limitations for a person whose cause of action accrued during a period of criminal incarceration. Ill.Rev. Stat. ch. 110, para. 13–211. Under section 13–211, the two-year statute of limitation would begin to run on the date the person was freed. Since Pearson remains incarcerated, the limitations period would not yet have begun to run under the old statute. In November 1987, however, the state legislature amended this tolling provision to exclude claims against Department of Corrections and its personnel. Thus, the statute of limitations for such claims would begin to run on the day the cause of action accrues. In our case, Pearson's claim accrued, at the latest, in October 1986. The question becomes whether to apply the

---

1. It should be noted that the only objection defendants raised below to counsel's Fed.R. Civ.P. 4(a)(5) motion was that plaintiff's underlying "cause of action was found to be time barred by the statute of limitations" and that "[t]his is another deadline mess." Defendants did not specifically contend below that plaintiff failed to meet the standard set forth in that Rule for receiving an extension of time to file a notice of appeal.

2. The court held a hearing on counsel's motion specifically to provide this Court with a record of the relevant information the court used to justify its decision to grant the motion: "I have gone on at some length here because I want this to be available for the Court of Appeals to read in the event that the timeliness of appeal is challenged."

3. In the alternative, Pearson contends that the district court erred in applying Illinois' two-year personal injury statute of limitations, Ill.Rev. Stat. ch. 110, para. 13–202, instead of the five-year residual statute. *Id.* para 13–205. While one would have thought that this particular debate had been laid to rest by our decision in *Kalimara v. Illinois Department of Corrections,* 879 F.2d 276, 277 (7th Cir.1989) (per curiam) ("expressly reaffirming" the applicability of a two-year statute of limitations to § 1983 claims arising in Illinois), a recent decision of this court provides Pearson with an arguable basis to seek to overturn *Kalimara. See Gray v. Lacke,* 885 F.2d 399 (7th Cir.1989). Because of our disposition, however, we do not reach the merits of this argument and reiterate that *Kalimara* continues to be the law of this circuit.

amendment retroactively to Pearson's claim, and, if so, how to apply it.

There appears to be no Illinois case law analyzing the retroactive application of the amendment to section 13–211, and the parties rely on two somewhat contradictory lines of authority. The resolution of the retroactivity issue depends, in large part, on how one characterizes the action of the Illinois legislature with respect to amending section 13–211. Defendants argued, and the district court held, that the amendment constituted a "shortening of the statute of limitations." Characterized in this way, the district court correctly noted that Illinois courts apply such an amendment retroactively "if application of the amendment leaves the claimant with a reasonable amount of time after the amendment's effective date to file his claim." *Knox v. Lane,* 726 F.Supp. 200 (N.D.Ill.1989) (quoting *Phillips Prods. Co. v. Industrial Comm.,* 94 Ill.2d 200, 68 Ill.Dec. 500, 502, 446 N.E.2d 234, 236 (1983)). The relevant period of time is "between the amendment's effective date and the date when the claim would be barred under the terms of the amendment." *Phillips,* 68 Ill.Dec. at 502, 446 N.E.2d at 236. If a reasonable time would not remain with retroactive application of the amendment, the court will allow a reasonable time. *Mega v. Holy Cross Hosp.,* 111 Ill.2d 416, 95 Ill.Dec. 812, 814, 490 N.E.2d 665, 667 (1986). The determination whether the period is reasonable is made on a case by case basis, *see Balzer v. Inland Steel Co.,* 100 Ill.App.3d 1071, 56 Ill.Dec. 594, 595, 427 N.E.2d 999, 1000 (1981), and has varied from as short as 9 months, *Matayka v. Melia,* 119 Ill.App.3d 221, 74 Ill.Dec. 851, 853, 456 N.E.2d 353, 355 (1983), to as long as 15 months, *Kimble v. O'Leary,* 1989 WL 105221, 1989 U.S. Dist. Lexis 10446 (N.D.Ill. Sept. 1, 1989).

Under this analysis, the district court held that Pearson was left with a reasonable amount of time (11 months) after November 1987 to file suit before the amended statute of limitations expired in October 1988.

Plaintiff does not discuss *Phillips* or argue that allowing 22 months to file after the effective date of the amendment would be reasonable. Instead, plaintiff characterizes the action of the state legislature in amending section 13–211 as "eliminating a disability." Under this analysis, a plaintiff is given two years after the effective date of the amendment eliminating the disability to file his or her complaint. *Goodwin v. Goldstein,* 46 Ill.App.3d 704, 5 Ill.Dec. 128, 361 N.E.2d 128 (1977); *see also D'Andrea v. Montgomery Ward & Co.,* 571 F.2d 403 (7th Cir.1978) (applying *Goodwin*); *Floyd v. Lunde,* 54 Ill.App.3d 132, 11 Ill.Dec. 897, 369 N.E.2d 351 (1977) (same); *Jeschke v. Ruhlow,* 59 Ill.App.3d 125, 17 Ill.Dec. 122, 376 N.E.2d 15 (1978) (same); *Munck v. Munck,* 62 Ill.App.3d 223, 19 Ill.Dec. 377, 378 N.E.2d 1252 (1978) (same). If the *Goodwin* rule were applied, of course, Pearson had until November 23, 1989 (2 years after the effective date of the amendment) to file suit and thus his September 15, 1989 filing was timely. Although *Goodwin* and its progeny involved the removal of an age disability (a change in the age of majority from 21 to 18), Pearson argues that this analysis is applicable to his case.[4] Because of the ultimate disposition of this case, however, we need not resolve this issue at this time.

■ Although both parties develop arguments in their briefs regarding the district court's holding, neither party discusses what seems to be an essential incongruity of the case. The district court held that

---

4. Pearson also relies on *Bailey v. Faulkner,* 765 F.2d 102, 104 (7th Cir.1985), for support. In *Bailey,* this court held that an incarcerated plaintiff in Indiana had two years from the effective date of the repeal of the imprisoned person tolling provision to file suit. This statement was not supported by a citation to authority, but it was likely based on an Indiana statute which specifically provides that any person under a legal disability when the cause of action accrues has a two-year grace period to file suit after the disability is removed. *See* Ind.Code § 34–1–2–5 (1983). Illinois has no such provision, and thus *Bailey* provides Pearson with little, if any, additional support.

plaintiff could not proceed with his case because his amended complaint was filed too late. Yet Pearson, at the time proceeding *pro se*, clearly attempted to preserve his rights when he wrote the judge a letter before the statute had run. In the letter, Pearson wrote that he was surprised that his complaint had not been amended and also made it clear that he was aware that the two-year statute of limitations was about to expire. He provided a complete factual summary of the events that constituted the basis for his suit, including names (as many as he knew), dates, and the facts constituting the basis of his claim. Instead of investigating Pearson's earlier attempt to amend, or broadly construing this letter as *itself* an amended complaint, the court construed the letter as merely a request to file an amended complaint. Yet the court's action to grant this request (and its decision to appoint counsel to assist Pearson) occurred just seven days before the statute of limitations was to expire. The timing of the court's decision left Pearson with very little room to maneuver.

We conclude that under the circumstances of this case the district court should have broadly construed Pearson's letter under *Haines v. Kerner*, 404 U.S. 519, 92 S.Ct. 594, 30 L.Ed.2d 652 (1972), to be an amended complaint. As we have often noted,

> the district court is required to liberally construe the *pro se* plaintiff's pleadings, "however inartfully pleaded." *Estelle v. Gamble*, 429 U.S. 97, 106, 97 S.Ct. 285, 292, 50 L.Ed.2d 251 ... (1976).... The purpose of this more solicitous review is to insure that *pro se* pleadings are given

"fair and meaningful consideration." *Matzker v. Herr*, 748 F.2d 1142, 1146 (7th Cir.1984) (quoting *Caruth v. Pinkney*, 683 F.2d 1044, 1050 (7th Cir.1982)). *Ricketts v. Midwest Nat'l Bank*, 874 F.2d 1177, 1183 (7th Cir.1989); *cf. McCall–Bey v. Franzen*, 777 F.2d 1178, 1191 (7th Cir. 1985) (dicta questioning whether inmate's letter should have been construed as complaint). In this case, the court sent the defendants a copy of the letter before the statute of limitations expired, and thus they had knowledge of the facts constituting the basis for the suit within the limitations period. It seems clear that the facts alleged in Pearson's letter state a claim for relief under section 1983. Whether this claim can withstand a properly filed and supported motion for summary judgment is another question, one that can best be addressed on remand in the district court. On remand, appointed counsel should be permitted to consolidate the various claims that exist in the different complaints in order to facilitate a complete disposition of the issues in this case.[5]

## III.

In conclusion, the decision of the district court in this case is REVERSED and REMANDED for further proceedings consistent with this opinion, and the court is directed to appoint new counsel for plaintiff.

---

**5.** There are several claims that should be consolidated: First, Pearson's original complaint alleged an equal protection violation that must still be considered. The district court dismissed the due process claim, but allowed the equal protection claim to stand. Also, Pearson's letter alleges that an unknown guard opened his cell door to allow the inmates to beat him. This allegation represents a claim that can be stated against a "John Doe" guard for direct punishment or harm for his actions. In addition, Pearson alleged that this beating was administered in retaliation for his earlier suit. Finally, as appointed counsel noted, the defendants allegedly conspired to deprive Pearson of a fair investigation that would have revealed to him the identity of the guard who allowed the beating to occur. This list is by no means exhaustive, but is offered for purposes of illustration only.