# In the

# United States Court of Appeals

## For the Seventh Circuit

Nos. 10-3722 & 10-3925

ROBERT SHERMAN,

*Plaintiff-Appellant/*
*Cross-Appellee,*

*v.*

PATRICK QUINN, in his official
capacity as Governor of the State
of Illinois, et al.,

*Defendants-Appellees/*
*Cross-Appellants.*

Appeals from the United States District Court
for the Central District of Illinois.
No. 10 C 3086—**Michael P. McCuskey**, *Chief Judge*.

ARGUED SEPTEMBER 9, 2011—DECIDED JANUARY 3, 2012

Before CUDAHY, POSNER, and WILLIAMS, *Circuit Judges*.

WILLIAMS, *Circuit Judge.* Robert Sherman challenges
certain portions of Illinois Public Act 96-39, also known
as the 2009 "Illinois Jobs Now!" capital bill. He alleges
that certain line item appropriations made through the

legislation improperly fund grants to religious organiza-
tions in violation of the Establishment Clause of the
First Amendment. Because we find that the district court
abused its discretion in granting Sherman an extension
to file his notice of appeal, we dismiss his appeal for
lack of jurisdiction, and the defendants-appellees' cross-
appeal as moot.

## I. BACKGROUND

On April 7, 2010, Robert Sherman filed a seven-count
complaint in the district court seeking injunctive relief
against Patrick Quinn, sued in his official capacity as
Governor of the State of Illinois, Warren Ribley, sued in
his official capacity as Director of the Illinois Depart-
ment of Commerce and Economic Opportunity (the
"Department"), and Daniel W. Hynes, sued in his official
capacity as Comptroller of the State of Illinois. The com-
plaint challenged certain appropriations made under
Public Act 96-39, generally known as the 2009 "Illinois
Jobs Now!" capital bill. The capital bill included line
item appropriations to funds from the Build Illinois
Bond Fund (established in 1985, *see* 30 ILCS 425/9 (2008))
to the Department for grants to thousands of not-for-
profit organizations and local governments for capital
construction, infrastructure, improvement, and repair
costs.

Sherman challenged an appropriation made to Gov-
ernor Quinn for discretionary spending as well as 155 of
the line item appropriations that fund grants to religious
organizations, arguing that such appropriations violate

the Establishment Clause of the First Amendment and Illinois state law. The line item appropriations in capital bill, for example, provided that $75,000 be appropriated from the Build Illinois Bond Fund to the Department "for a grant to the Union Missionary Baptist Church for costs associated with capital improvements," that $140,000 be appropriated for a grant "for general infrastructure at St. Martin de Porres Church," and that $225,000 be appropriated for a grant to the Chicago Chesed Fund "for costs associated with capital improvements."[1]

The defendants moved to dismiss the complaint on the grounds that the Eleventh Amendment barred Sherman's state law claims, that Sherman lacked standing to challenge the discretionary appropriation to the Governor, and that the complaint failed to state a claim that the line item appropriations violated the Establishment Clause either as applied or on their face. Sherman responded to the motion, and also asked that, if the court determined that his complaint failed to state a claim regarding the line item appropriations, he be given leave to amend the complaint to add additional facts.

On August 6, 2010, the district court entered an order granting the defendants' motion to dismiss and denying Sherman's request for leave to file an amended complaint. The court agreed with the defendants that the Eleventh Amendment barred Sherman's state law

---

[1] See Ill. P.A. 96-956, Art. 102, § 3910; Art. 103, § 1805; and Art. 102, § 255.

claims, that Sherman lacked standing to challenge the discretionary appropriation to the Governor, and that the complaint failed to state an as-applied challenge to the line item appropriations because the funds had not yet been dispersed. The court also found that the complaint failed to state a claim that the line item appropriations were facially invalid, applying the test set forth in *Lemon v. Kurtzman*, 403 U.S. 602 (1971).

On September 13, 2010, Sherman filed a motion to reconsider and amend the judgment under Federal Rule of Civil Procedure 59(e), arguing that grants to the explicitly sectarian organizations, such as the church grantees, could not possibly be used for secular purposes. On October 14, 2010, the district court entered an order denying Sherman's motion.

The thirty-day period for Sherman to file his notice of appeal under Federal Rule of Appellate Procedure 4(a)(1)(A) expired on November 15, 2010. On November 16, 2010, Sherman filed a motion to extend the time to file his notice of appeal under Federal Rule of Appellate Procedure 4(a)(5), which allows the district court to grant an extension upon a showing of "excusable neglect or good cause" if the motion is filed within thirty days after the time to appeal the judgment has run. Fed. R. App. P. 4(a)(5)(A)(ii). Sherman argued that the "good cause" standard applied, and that he met such a standard. Sherman's counsel attached to the motion an affidavit, in which counsel stated that the deadline for filing the notice to appeal "slipped through the cracks" due to the demands on his time

from his ballot-qualified candidacy for Governor of Illinois in the November 2010 general election. Counsel stated that the demands of the run "completely overwhelmed my capacity to complete all tasks before me," and that between the November 2, 2010 election and the filing of the motion on November 16, he was "focused on catching up on numerous cases that had to be continued, put on hold or otherwise delayed." He stated that his difficulties were "compounded by the fact that I have been working without a legal assistant of any kind." Though counsel recognized that his candidacy was voluntary, he argued that it "constitutes an important civic function."

Before the defendants objected, the district court granted Sherman's motion on November 17, 2010 (without explanation), and extended the time to file a notice of appeal to November 19, 2010. On that date, Sherman filed a notice of appeal of the court's August 16 and October 14 orders. On November 30, 2010, the defendants filed a motion for reconsideration of the district court's November 17 order granting the extension. The defendants argued that Sherman was required to show "excusable neglect," rather than simply "good cause," and that counsel's explanation failed to make a showing of excusable neglect. On December 2, 2010, the district court denied the defendants' motion, stating that "[t]he Court has reviewed the Motion, the Memorandum and the Text Order entered November 17, 2010, and finds no manifest errors of law or fact . . . ." On December 17, 2010, the defendants filed a notice of appeal of the court's November 17 and December 2

orders. We consolidated Sherman's appeal with the defendants', and denied defendants' motion to dismiss Sherman's appeal for lack of jurisdiction. The defendants now reassert their challenge to this court's jurisdiction.

## II. ANALYSIS

"A timely notice of appeal is a prerequisite to appellate review." *McCarty v. Astrue*, 528 F.3d 541, 544 (7th Cir. 2008) (citations omitted). In a civil suit in which the United States or its officer or agency is not a party, a notice of appeal must be filed within thirty days from the entry of judgment. 28 U.S.C. § 2107(a); Fed. R. App. P. 4(a)(1)(A). Under Federal Rule of Appellate Procedure 4(a)(5), the district court may extend the time to file notice of appeal if a party so moves no later than thirty days after the original deadline for the filing of notice of appeal, and that party shows "excusable neglect or good cause." As the defendants point out, we had previously stated that "[t]he more lenient standard of good cause" applied only to "requests for extensions of time made prior to the expiration of the thirty-day appeal period." *Parke-Chapley Const. Co. v. Cherrington*, 865 F.2d 907, 910 (7th Cir. 1989); *see also Lorenzen v. Emp. Ret. Plan*, 896 F.2d 228, 231 (7th Cir. 1990). But the 2002 amendments to the Rule clarified that the distinction is no longer a temporal one. The advisory committee notes to the 2002 amendments state that Rule 4(a)(5)(A)(ii) was amended to correct the misunderstanding of the Rule that separate standards applied based on when the motion was filed. The note

states that "[a] motion for an extension filed *prior* to the expiration of the original deadline may be granted if the movant shows either excusable neglect or good cause. Likewise, a motion . . . filed during the 30 days *following* the expiration of the original deadline may be granted if the movant shows either excusable neglect or good cause." (Emphasis added). The advisory committee note goes on to state that "[t]he good cause and excusable neglect standards have 'different domains.'" *Id*. (quoting *Lorenzen*, 896 F.2d at 232). The relevant question is one of fault, as "[t]he excusable neglect standard applies in situations in which there is fault; in such situations, the need for extension is usually occasioned by something within the control of the movant." *Id*. On the other hand, the good cause standard "applies in situations in which there is no fault—excusable or otherwise." *Id*. So, for example, if "the Postal Service fails to deliver a notice of appeal, a movant might have good cause" and can still seek an extension under that standard during the thirty days *following* the expiration of the original deadline. *Id*. In light of the 2002 amendment to Rule 4(a)(5)(A)(ii), motions filed after the original appeal period expires are no longer subject solely to the excusable neglect standard.

This, however, does not mean that the "good cause" standard applies in this case, given that Sherman's counsel concedes that the events leading to the late filing were in his control, and were his "fault," (albeit "fault" that counsel seeks to have excused). We therefore consider whether Sherman showed excusable neglect.

A district court's determination that excusable neglect is established is reviewed for an abuse of discretion. *McCarty*, 528 F.3d at 544 (citing *Garwood Packaging, Inc. v. Allen & Co., Inc.*, 378 F.3d 698, 700 (7th Cir. 2004)). It is not clear in this case how exactly the district court exercised its discretion given a lack of specific reasons for granting Sherman's motion for an extension of time. "Ordinarily, when a district judge fails to explain a nonobvious exercise of his discretion, the proper remedy is to remand the case for him to do so." *United States v. Guy*, 140 F.3d 735, 736 (7th Cir. 1998). But where "the absence of excuse is so total . . . that it would be an abuse of discretion for the judge to extend the time for appeal," the appeal must be dismissed as untimely. *Id*. Such is the case here.

"The standard for reviewing whether neglect is 'excusable' is an equitable one, taking into consideration relevant circumstances, including (1) the danger of prejudice to the non-moving party; (2) the length of the delay and its impact on judicial proceedings; (3) the reason for the delay (i.e., whether it was within the reasonable control of the movant); and (4) whether the movant acted in good faith." *McCarty*, 528 F.3d at 544 (citing *Pioneer Inv. Serv. Co. v. Brunswick Assocs.*, 507 U.S. 380, 395 (1993); *Marquez v. Mineta*, 424 F.3d 539, 541 (7th Cir. 2005)). To be fair, the length of delay here (four days) was minimal, and there is no real prejudice alleged. But we have "repeatedly noted that there is unlikely to ever be harm in the Rule 4(a)(5) setting, because the neglectful applicant has a limited time period to request relief—in this case, sixty days—hence

there will never be a terribly long delay." *Id*. at 545 (citing *Marquez*, 424 F.3d at 541-42; *Prizevoits v. Indiana Bell Tel. Co.*, 76 F.3d 132, 134 (7th Cir. 1996)).

Generally, a simple miscalculation of time is not a sufficient reason to extend the time allowed to file a notice of appeal. *McCarty*, 528 F.3d at 544 (gathering cases). *But see United States v. Brown*, 133 F.3d 993, 997 (7th Cir. 1998) (finding excusable neglect where a Wisconsin attorney who practiced exclusively in state court miscalculated a filing deadline in his first federal case). In *Lorenzen v. Employees Retirement Plan*, 896 F.2d 228 (7th Cir. 1990), we found that the district court did *not* abuse its discretion in granting the defendants an extension to file a notice of appeal where the plaintiff filed a confusing post-judgment motion, presumably under Federal Rule of Civil Procedure 59(e), after the initial notice of appeal was filed. Before the 1993 amendments to Rule 4(a)(4), a litigant had to re-file a notice of appeal within thirty days of an order disposing of a Rule 59 motion, which the defendant in *Lorenzen* did not do. *Id*. at 231 (citing Fed. R. App. P. 4(a)(4)(1990)). We did note that "[i]f the mistake is slight, nonprejudicial, easily understandable, could happen to the best of us, etc., then dismissal of the appeal, with prejudice, may be an excessive sanction." *Id*. at 232. But in finding no abuse of discretion, we relied on the fact that the defendant's error "was a natural one" given the confusing nature of plaintiff's post-judgment motion, for if the plaintiff's motion was not properly under Rule 59, the defendant would not have had to re-file the notice of appeal. *Id*. at 232. We

also relied on the fact that the error was induced by the conduct of the party opposing the extension. *Id*. at 233. In doing so, we approached the case as one of a "plausible misconstruction[ ], but not mere ignorance, of the law or rules," or "an attorney's good faith misinterpretation of a procedural rule." *Id*. at 232 (quoting *Redfield v. Continental Casualty Corp.*, 818 F.2d 596, 602 (7th Cir. 1987); *Cherrington*, 865 F.2d at 911-12). That is not the case before us. Sherman's counsel has indicated no action on the part of the opposing party that induced his missing the deadline to file the notice of appeal, and no facts or reasonable reading of the rule that render the error a "natural" one. He simply asserts that he was overloaded with obligations and working without an assistant, and so *Lorenzen* is not instructive.

We have also held "that the heavy work load of counsel that caused him to overlook the time for appeal does not constitute excusable neglect." *Files v. City of Rockford*, 440 F.2d 811, 815 (7th Cir. 1971). But in *Pearson v. Gatto*, 933 F.2d 521, 524-25 (7th Cir. 1991), we found that the district court did not abuse its discretion in granting an extension of time, where the reason for the delay was counsel's overcommitment to court-appointed cases which caused him to miss the deadline. The district court found the delay "quite understandable and altogether credible," given the large number of cases to which the court had appointed counsel. We acknowledged that the excusable neglect standard was a narrow one and that a heavy workload rarely met that standard, but found that the "good faith behavior of counsel has . . . always been an important factor sup-

porting a finding of excusable neglect." *Id.* at 525 (quoting *Redfield*, 818 F.2d at 601). We noted that "[c]ounsel's overcommitment was due to what can fairly be described as an excess of public service and altruism," and that counsel had engaged in "extensive pro bono activity." *Id.* at 525. Again, this is not the case before us. One's choice to run for public office may be based on a variety of considerations, and altruism could be far down the list. Counsel's own choice to run for governor, though perhaps commendable, was entirely voluntary, and the election was approximately two weeks before the deadline for filing the notice of appeal. Many practicing attorneys run for office or submit themselves for consideration for positions on non-profit boards or bar associations, but cannot do so to the detriment of their clients. Under these facts, we find that the district court abused its discretion in granting the extension. We find the notice of appeal to be untimely, and we therefore lack jurisdiction over Sherman's appeal.

## III. CONCLUSION

For the reasons set forth above, the appeal is DISMISSED for lack of jurisdiction, and the defendants-appellees' cross-appeal is DISMISSED as moot.