In the

# United States Court of Appeals
## For the Seventh Circuit

No. 12-2540

LOUIS CAPRA,

*Plaintiff-Appellant,*

*v.*

COOK COUNTY BOARD OF REVIEW *et al.*,

*Defendants-Appellees.*

Appeal from the United States District Court for the
Northern District of Illinois, Eastern Division.
No. 11 CV 04028 — **Sharon Johnson Coleman**, *Judge.*

Nos. 12-2848 and 12-3116

SATKAR HOSPITALITY, INC. *et al.*,

*Plaintiffs-Appellees, Cross-Appellants,*

*v.*

LARRY R. ROGERS *et al.*,

*Defendants, Cross-Appellees,*

*and*

COOK COUNTY BOARD OF
REVIEW *et al.*,

*Defendant-Appellant.*

Appeals from the United States District Court for the
Northern District of Illinois, Eastern Division.
No. 10 CV 06682 — **Matthew F. Kennelly**, *Judge.*

ARGUED JUNE 4, 2013 — DECIDED AUGUST 21, 2013

Before FLAUM, SYKES, and HAMILTON, *Circuit Judges.*

HAMILTON, *Circuit Judge.* These appeals present issues
concerning local taxpayers' ability to sue local tax officials for
alleged federal constitutional violations. Both cases stem from
news reports in 2009 claiming that then-Illinois State Represen-
tative Paul Froehlich had offered property tax reductions to his
constituents and implying that he received campaign contribu-
tions and political support in exchange. The news reports
claimed that Rep. Froehlich arranged for many of his constitu-

ents' property taxes to be reduced on appeal to the Cook County Board of Review. The plaintiffs in these two cases, Louis Capra and Satkar Hospitality (and two of its owners), had appealed their property tax assessments and had won such reductions on appeal. After several news reports highlighted the potential impropriety of their reductions, though, both were called back before the Board of Review and the Board reversed both reductions.

Capra and Satkar Hospitality filed these separate federal lawsuits against the Cook County Board of Review and its individual members and staff alleging several constitutional violations. We address the two cases together because the issues involved are so similar. As both district courts held, the individual defendants are entitled to absolute quasi-judicial immunity and the Board itself is not. We conclude, however, that the damages claims against the Board cannot proceed. They are not cognizable in federal courts under *Fair Assessment in Real Estate Ass'n v. McNary*, 454 U.S. 100, 116 (1981), which requires federal courts to abstain in suits for damages under 42 U.S.C. § 1983 challenging state and local tax collection, at least where an adequate state remedy is available, as it is here.

I. *Factual and Procedural Background*

In April and May 2009, a political blog and a Chicago television station began reporting on Illinois State Rep. Paul Froehlich. The reports suggested that Rep. Froehlich offered his constituents reductions in their county property taxes in exchange for political favors. A companion appeal, *Satkar Hospitality v. Fox Television Stations, Inc.*, No. 11-3572, addresses the content of the reports in greater detail, but here it suffices

to say that the reports at least implied that Rep. Froehlich had handled his constituents' property tax appeals in a way that consistently resulted in tax reductions, and that he had done so in exchange for political favors and support. The reports specifically highlighted Satkar Hospitality, reporting that it and its owners had donated thousands of dollars worth of hotel rooms to Froehlich's campaign.

Both plaintiffs here, Satkar Hospitality and Louis Capra, appealed their property tax assessments for the years 2007 and 2008 and won reductions. But in June 2009, after the publicity about Rep. Froehlich, both were called back before the Board of Review for new hearings. Both plaintiffs' complaints allege that in these second hearings, the Board inquired not into the value of their properties but into the nature of their relationships with Rep. Froehlich. The Board rescinded the reductions for both plaintiffs. Plaintiffs allege that the Board, when questioned about its actions, claimed that "we can do anything we want."

The plaintiffs filed these federal lawsuits against the Board itself as well as its three commissioners (Larry Rogers, Joseph Berrios, and Brendan Houlihan), its chief deputy commissioner (Scott Guetzow), and its first assistant commissioners (Thomas Jaconetty and John Sullivan). Both complaints allege that the Board and its commissioners and staff (the "individual defendants") violated the plaintiffs' right to equal protection by singling them out for their association with Rep. Froehlich, their right to due process by arbitrarily rescinding their reductions without a fair hearing, and their First Amendment rights by retaliating against them based on their political ties to Rep. Froehlich. Both plaintiffs also allege that any appeal

available to them from the Board's decisions would not satisfy due process. They allege that their appeals before the state tax appeal board are "red-flagged" and could take seven to eight years to decide. They also allege that appeal to the Cook County Circuit Court would not provide impartial review because judges in that court are slated for election by the county Democratic Party, of which two individual defendants are leaders.[1]

In the *Satkar Hospitality* case, the district court denied the defendants' motion to dismiss for failure to state a claim but granted the individual defendants' motion to dismiss on the ground that they are absolutely immune because their work reviewing tax appeals is quasi-judicial. *Satkar Hospitality Inc. v. Cook County Bd. of Review*, 819 F. Supp. 2d 727 (N.D. Ill. 2011). As the sole remaining defendant, the Board moved for judgment on the pleadings under Federal Rule of Civil Procedure 12(c), arguing that it is entitled to either the same quasi-judicial absolute immunity as the individual defendants or Eleventh Amendment sovereign immunity. The district court denied the motion, finding that the Board, as a municipal entity, is not entitled to quasi-judicial absolute immunity and that the Eleventh Amendment does not apply because the Board is a county entity operating independently of the state treasury. *Satkar Hospitality Inc. v. Cook County Bd. of Review*, No. 10 C 6682, 2012 WL 3151376 (N.D. Ill. Aug. 2, 2012). The plaintiffs

---

[1] The Satkar Hospitality complaint also included as defendants the local television station, political blog, and reporters and staff members of both, and alleged defamation and false light claims under Illinois law. The appeal from dismissal of those counts is pending in *Satkar Hospitality v. Fox Television Stations, Inc.*, No. 11-3572.

appealed the district court's finding of absolute immunity for
the individual defendants. The Board cross-appealed the
district court's finding that the Board was not entitled to
absolute immunity. We have jurisdiction because the district
court properly certified its dismissal of the individual defen-
dants as a final judgment under Federal Rule of Civil Proce-
dure 54(b), and the Board's appeal from the denial of its
immunity defense is appealable under the collateral order
doctrine. See *Behrens v. Pelletier*, 516 U.S. 299, 307 (1996);
*Nixon v. Fitzgerald*, 457 U.S. 731, 742–43 (1982).

In the *Capra* case, the district court also found that the
individual defendants were entitled to quasi-judicial absolute
immunity but that the Board was not. *Capra v. Cook County Bd.
of Review*, No. 11-cv-4028, 2012 WL 1969393 (N.D. Ill. May 30,
2012). The district court in *Capra*, however, dismissed the entire
case, holding that Capra had failed to state a claim against the
Board for a violation of his equal protection or due process
rights. (Capra had conceded the First Amendment claim.
Unlike the *Satkar* plaintiffs, he never had any contact with Rep.
Froehlich and had not contributed to his campaign.) Capra has
appealed the final judgment against him.

II. *Analysis*

These section 1983 actions for damages against the Board
and its members and staff face obstacles they cannot overcome.
We begin by explaining why the individual defendants are
entitled to quasi-judicial absolute immunity. We then explain
why the Board itself is not entitled to the same absolute
immunity but that the damages claims against the Board itself
must be dismissed without prejudice based on comity concerns

under *Fair Assessment in Real Estate Ass'n v. McNary*, 454 U.S. 100 (1981). We conclude with a brief discussion of the pleading requirements for plaintiff Capra's claims against the Board.[2]

A. *Quasi-Judicial Absolute Immunity for Individual Defendants*

"Absolute immunity is available to members of quasi-judicial adjudicatory bodies when they perform duties that are functionally comparable to those of a judicial officer," regardless of the identity of the actor. *Tobin for Governor v. Illinois State Bd. of Elections*, 268 F.3d 517, 521 (7th Cir. 2001), citing *Butz v. Economou*, 438 U.S. 478, 512-13 (1978). Both district courts found that the individual defendants—the members and staff of the Board of Review—are entitled to such absolute immunity. The district courts followed our decision on the same question with regard to individual members of a different Illinois county's Board of Review. In *Heyde v. Pittenger*, 633 F.3d 512 (7th Cir. 2011), we affirmed a district court's dismissal of a similar section 1983 suit, alleging equal protection, due process, and retaliation claims against individual members of the Tazewell County Board of Review. We found that those individual defendants were entitled to absolute immunity based on their quasi-judicial functions. *Id*. at 516–19.

We considered the function and role of the Tazewell County Board of Review in light of the six factors for analyzing quasi-judicial immunity articulated in *Butz*: (1) the need to

---

[2] In *Satkar Hospitality*, the Board argued before the district court that the *Rooker-Feldman* doctrine barred subject matter jurisdiction and that the Board was protected by Eleventh Amendment sovereign immunity. The district court correctly rejected both arguments, which have not been renewed on appeal.

assure that the individual can perform her functions without harassment or intimidation; (2) the presence of safeguards that reduce the need for damages actions as a means for controlling unconstitutional conduct; (3) the insulation from political influence; (4) the importance of precedent; (5) the adversarial nature of the process; and (6) the correctability of error on appeal. See *id*. at 517, citing *Butz*, 438 U.S. at 512. We observed that the Board's hearing process was similar to a judicial proceeding—with notice and the opportunity to be heard and to present evidence—as laid out by the Board's governing statute. *Id*. at 518; 35 Ill. Comp. Stat. § 200/16-10 (board has power to "summon any assessor, deputy, or other person to appear before it to be examined under oath concerning the method by which any evaluation has been ascertained, and its correctness"); §§ 200/16-25, -30, -35 (requiring notice in writing to taxpayer and opportunity to be heard). We also observed that the Board's function of reviewing property assessments warranted insulation from harassment or intimidation because it was "inherently controversial and likely to result in disappointed parties and, unless checked, a multitude of lawsuits." *Heyde*, 633 F.3d at 519. Finally, we observed that Illinois law provided adequate opportunity to appeal from an unfavorable Board decision, noting that taxpayers may appeal as a matter of right to the Property Tax Appeal Board, whose decisions are appealable to Illinois state courts of general jurisdiction. *Id*.

*Heyde* controls here. The Tazewell County Board of Review serves the same function as the Cook County Board of Review, just in a different county. The Boards are defined and governed

by parallel Illinois statutes.[3] The plaintiffs offer no convincing argument for distinguishing *Heyde*. They argue that the Board in *Heyde* actually did an investigation and provided its reasons and rationale for its ruling, whereas the Board here allegedly made its decisions before the taxpayers' respective hearings. But the actual conduct or alleged wrongdoing of an official acting in a quasi-judicial capacity does not temper the protection of absolute immunity. See *Tobin for Governor*, 268 F.3d at 524 ("judicial officers are entitled to that immunity even when they act in error, maliciously, or in excess of their authority"). That is the rule because "the threat of being subjected to *any* litigation impedes the officers' ability to engage in independent and fearless decision-making." *Id.* We find no reason to question *Heyde.* The individual defendants are entitled to quasi-judicial absolute immunity.

B.  *No Absolute Immunity for the Board of Review*

The Cook County Board of Review argues that it should also be entitled to the same quasi-judicial absolute immunity since it performs the same functions. Unlike individuals sued in their individual capacities, though, municipal entities are not entitled to absolute immunity. The Supreme Court made this quite clear in *Monell v. Department of Social Services*:

> we express no views on the scope of any municipal immunity beyond holding that *municipal bodies sued*

---

[3]  The Tazewell Board is governed by sections 200/16-20 through 200/16-90 of chapter 35 of the Illinois code, which apply to counties with fewer than 3,000,000 residents. The Cook County Board is governed by sections 200/16-95 through 200/16-155, which apply to the only county with more than 3,000,000 residents. The language is not identical, but the powers, duties, and required procedures are equivalent.

> *under § 1983 cannot be entitled to an absolute immunity*,
> lest our decision that such bodies are subject to suit
> under § 1983 "be drained of meaning."

436 U.S. 658, 701 (1978) (emphasis added), quoting *Scheuer v. Rhodes*, 416 U.S. 232, 248 (1974).

We have followed this directive and held consistently that municipal entities are not entitled to absolute immunity even where the entity's officers are entitled to immunity. In *Reed v. Village of Shorewood*, 704 F.2d 943 (7th Cir. 1983), we held that a village mayor who served as local liquor commissioner was entitled to quasi-judicial absolute immunity, but the immunity did not extend to the village itself. *Id*. at 953. We reasoned that the rationale of *Owen v. City of Independence*, 445 U.S. 622 (1980), which declined to afford qualified immunity to a municipality despite the good faith of its individual officers, should apply with as much force to legislative and judicial officers and did not extend to the village the absolute judicial and legislative immunity we afforded to its mayor and trustees as individuals. *Reed*, 704 F.2d at 953 ("[T]he municipality's liability for such acts extends to acts for which the policy-making officials themselves might enjoy absolute immunity because the acts were legislative or judicial in character.").

More recently, we explained in *Hernandez v. Sheahan*, 455 F.3d 772 (7th Cir. 2006), that "units of government are not entitled to immunity in suits under § 1983," in part because immunities are "personal defenses designed to protect the finances of public officials whose salaries do not compensate them for the risks of liability," unlike local governments, "which can tap the public fisc." *Id*. at 776 (finding city and

sheriff's department not entitled to quasi-judicial immunity from § 1983 suit).[4]

The Board points to no examples of a circuit court applying absolute immunity to a municipal entity, and we have found none. Most of the cases it cites involved state entities, which frequently will be protected from suit by Eleventh Amendment sovereign immunity or its statutory parallel under *Will v. Michigan Dep't of State Police*, 491 U.S. 58, 71 (1989) (holding that states and state officials sued in official capacities are not "persons" who can be sued under § 1983). See, *e.g.*, *Olsen v. Idaho State Bd. of Med.*, 363 F.3d 916, 924–26 (9th Cir. 2004) (state medicine and professional discipline boards; court did not address why the state boards were entitled to the same immunity as their members and staff); *Goluszek v. H.P. Smith*

---

[4] Other circuits have held similarly that municipal entities are not entitled to the immunities that protect their officers. See *Bass v. Attardi*, 868 F.2d 45, 51 (3d Cir. 1989) (per curiam) (city planning board, "as a governmental entity has no immunity whatsoever" against damages suit under § 1983); *Aitchison v. Raffiani*, 708 F.2d 96, 100 (3d Cir. 1983) (in suit under § 1983, "liability against the municipality is not precluded simply because the defendants were found immune in their individual capacities"); *Hernandez v. City of Lafayette*, 643 F.2d 1188, 1196 (5th Cir. 1981) ("We consider the Supreme Court's decision in *Owen* and its caveat in *Lake Country Estates* to be dispositive of the city's argument and hold that the City of Lafayette is not entitled to a legislative immunity from damages under § 1983 in connection with its zoning regulations."); cf. *Turner v. Houma Mun. Fire and Police Civil Serv. Bd.*, 229 F.3d 478, 483–486 (5th Cir. 2000) (affirming denial of absolute quasi-judicial immunity for individuals in official capacity and municipal fire and police board, as "defenses such as absolute quasi-judicial immunity, that only protect defendants in their individual capacities, are unavailable in official-capacity suits[,]" which are entitled to only the immunities that would apply to the entity).

*Paper Co.*, No. 93 C 5329, 1993 WL 358160 (N.D. Ill. Sept. 14, 1993) (Illinois attorney disciplinary commission, which is a committee of the Illinois Supreme Court); *Tate v. Nevada Bd. of Med. Examiners*, No. 2:11-CV-1613 JCM (VCF), 2011 WL 5101987 (D. Nev. Oct. 26, 2011) (state board of medical examiners; in brief preliminary injunction opinion, court did not differentiate between board members and board itself), aff'd, *Tate v. Neyland*, 485 F. App'x 861 (9th Cir. 2012).

The Board also cites a district court opinion from Louisiana that extended absolute quasi-judicial immunity to a city alcohol control board, but the Fifth Circuit later interpreted the case as finding only immunity only for individual defendants. Compare *Brossette v. City of Baton Rouge*, 837 F. Supp. 759, 763 (M.D. La. 1993), aff'd, 29 F.3d 623 (5th Cir. 1994) (per curiam), with *Turner v. Houma Mun. Fire & Police Civil Serv. Bd.,* 229 F.3d 478, 485 & n.13 (5th Cir. 2000) (clarifying that *Brossette* and other cases' possible extension of immunity to municipal entities was necessarily limited to individual capacity claims because a "grant of official-capacity immunity would also have barred the claim against the city, contrary to *Monell* and its progeny"). Whatever the district court in *Brossette* might have intended, the Fifth Circuit's clarification in *Turner* was certainly correct. The Board also cites *Crenshaw v. Baynerd*, 180 F.3d 866 (7th Cir. 1999), and *Thompson v. Duke*, 882 F.2d 1180 (7th Cir. 1989), for broad language that quasi-judicial immunity applies to agencies, but in both cases the language referred to state entities that were not even parties to the suits.

Given *Monell* and the history of the Civil Rights Act, extending absolute immunity to the Board here would be a dramatic expansion of immunity that would severely limit the

scope of section 1983 further than Congress intended and further than the Supreme Court ever has. Insulating municipalities from suit on a theory of quasi-judicial immunity when a policy, custom, or policymaker has violated the Constitution would, as the Supreme Court noted in *Monell*, drain that important decision of its meaning. 436 U.S. at 701. The Board is not protected by quasi-judicial absolute immunity.

C. *Comity*

1. *The General Rule of Abstention*

There is, however, another narrower reason that these suits cannot proceed against the Board itself. In *Fair Assessment in Real Estate Ass'n v. McNary*, 454 U.S. 100 (1981), the Supreme Court relied on principles of comity to erect a high barrier to section 1983 damages suits against state and local tax systems such as this. In *Fair Assessment*, taxpayers sued county and state tax officials claiming that certain taxing practices deprived them of equal protection and due process. The Court considered whether such a suit could be entertained by a federal court at all, acknowledging the tension between section 1983, which provides broadly for suits under federal law against state and local governments and employees, and the Tax Injunction Act, 28 U.S.C. § 1341, which forbids federal courts from enjoining or interfering with the collection of state taxes. The Court ultimately concluded that the principles of comity and federalism underlying the Tax Injunction Act should apply, and the Court held that "taxpayers are barred by the principle of comity from asserting § 1983 actions against the validity of state tax systems in federal courts." *Fair Assessment*, 454 U.S. at 116. Instead, taxpayers alleging that their

federal rights have been violated by state or local tax practices
must first seek relief through the available state remedies, as
long as those remedies are "plain, adequate, and complete."
*Id.*[5]

Like the Tax Injunction Act, this comity doctrine "serves to
minimize the frictions inherent in a federal system of govern-
ment" and embodies longstanding "federal reluctance to
interfere with state taxation." *Empress Casino Joliet Corp. v.
Balmoral Racing Club, Inc.*, 651 F.3d 722, 725 (7th Cir. 2011) (en
banc); see also *National Private Truck Council, Inc. v. Oklahoma
Tax Comm'n*, 515 U.S. 582, 589–90 (1995) (extending *Fair
Assessment* to hold that plaintiffs cannot seek declaratory or
injunctive relief against state taxes in state courts under § 1983
where state law provides an adequate legal remedy).

*Fair Assessment* has been applied consistently to bar
plaintiffs from bringing section 1983 suits challenging the
validity or imposition of state and local taxes in federal courts
unless the available state remedies for those injuries are not
adequate, plain, and complete. In *Werch v. City of Berlin*,

---

[5] The parties did not raise or address *Fair Assessment* in the district courts
or in this court. We raised the issue at oral argument and ordered the
parties to file post-argument briefs addressing the case. We view abstention
under *Fair Assessment* as comparable to other abstention doctrines rooted
in federalism concerns, which an appellate court may raise even if it is not
a jurisdictional issue that must be raised. See *Int'l Coll. of Surgeons v. City of
Chicago*, 153 F.3d 356, 360 (7th Cir. 1998) (*Pullman* and *Burford* abstention);
*Barichello v. McDonald*, 98 F.3d 948, 955 (7th Cir. 1996) (all abstention
doctrines); *Waldron v. McAtee*, 723 F.2d 1348, 1351 (7th Cir. 1983) (*Pullman*
abstention). Also, our opinion in *Heyde*, which was addressed in detail in
the district courts in both cases, discussed and applied *Fair Assessment* in a
very similar case.  See 633 F.3d at 519–22.

673 F.2d 192 (7th Cir. 1982), we considered a section 1983 suit for injunctive relief and damages against the city of Berlin, its Common Council and Board of Review, and several individual city officials alleging that the city's tax on the plaintiff's farm equipment denied him equal protection of the law. We found that the district court could not consider the plaintiff's claims: "Principles of comity bar a taxpayer from contesting the validity of a state tax in a section 1983 damage action," and Wisconsin state law provided "plain, adequate, and complete" remedies for his claim. *Id*. at 194–95.[6] See also *Kerns v. Dukes*, 153 F.3d 96, 101–03 (3d Cir. 1998) (suit against county tax officials and state environmental agencies alleging change requiring property owners to join local sewer system, which imposed fees and service charges, was barred by *Fair Assessment* and the Tax Injunction Act because suit essentially challenged a state and local tax and Delaware provided

---

[6] In *Werch* we said that the court lacked "jurisdiction" to hear such a claim, but the Supreme Court has not been clear on whether *Fair Assessment* removes such suits from federal court jurisdiction or rather precludes courts from hearing certain cases even though they might fall within their jurisdiction. Compare *Hibbs v. Winn*, 542 U.S. 88, 107 n.9 (2004) (noting that *Fair Assessment* "preclude[d] original federal-court jurisdiction only when plaintiffs have sought district-court aid in order to arrest or countermand state tax collection"), with *Levin v. Commerce Energy, Inc.*, 560 U.S. 413, —, 130 S. Ct. 2323, 2330 (2010) (citing *Fair Assessment* for proposition that "comity doctrine counsels lower federal courts to resist engagement in certain cases falling within their jurisdiction"). Since *Werch*, the Supreme Court has been more precise in narrowing the scope of truly jurisdictional doctrines. See generally *Reed Elsevier, Inc. v. Muchnick*, 559 U.S. 154, 160–61 (2010); *Arbaugh v. Y&H Corp.*, 546 U.S. 500, 510–16 (2006). In light of the Supreme Court's more recent decisions, the better understanding is that *Fair Assessment* presents not a mandatory jurisdictional limit but a prudential comity issue that the court may raise itself.

adequate remedies). Our decision in *Heyde v. Pittenger* is directly relevant on this point, too. There, after finding the individual defendants were absolutely immune, we applied this doctrine of comity and abstention to affirm dismissal of the remaining equal protection and due process claims against the county board of review itself. 633 F.3d at 520–21.

Capra and Satkar Hospitality's lawsuits fall squarely within the rule of *Fair Assessment*. The plaintiffs challenge the application of a local tax under section 1983 on federal constitutional grounds. We must abstain from considering the claims unless the available state remedies are not adequate, plain, and complete.

### 2. *The Exception to Abstention*

After we raised the *Fair Assessment* abstention problem, plaintiffs argued that their cases fall within the exception because there are no "adequate, plain, and complete" state remedies available to them. We disagree.

In determining whether available state remedies are "adequate, plain, and complete" for purposes of *Fair Assessment*, we have used the comparable standard from the Tax Injunction Act, which bars federal courts from enjoining state taxes where a "plain, speedy and efficient" state remedy is available. 28 U.S.C. § 1341. See *Werch*, 673 F.2d at 194–95; see also *Lawyer v. Hilton Head Pub. Serv. Dist. No. 1*, 220 F.3d 298, 304–06 (4th Cir. 2000) (relying on language from section 1341 cases to explicate the "plain, adequate, and complete" exception under *Fair Assessment*); *Kerns*, 153 F.3d at 101 (where both section 1341 and *Fair Assessment* applied, court considered whether state remedies were "plain, speedy and efficient").

Thus, we take guidance from both comity and Tax Injunction Act case law in determining whether available state remedies are so flawed as to allow plaintiffs to avoid the *Fair Assessment* abstention doctrine.

State remedies are "plain, speedy and efficient" if they provide the taxpayer with a "full hearing and judicial determination at which she may raise any and all constitutional objections to the tax." *Rosewell v. LaSalle Nat'l Bank*, 450 U.S. 503, 514 (1981) (internal quotations omitted). A state remedy is not deficient merely because it will not result in the taxpayer's desired outcome. The analysis focuses on whether the state court remedy "meets certain minimal *procedural* criteria." *Id*. at 512 (reversing our circuit's decision that had allowed case challenging Cook County property tax assessments to proceed under federal Constitution); accord, *Huber Pontiac, Inc. v. Whitler*, 585 F.2d 817, 821 (7th Cir. 1978) (finding Illinois courts afforded a "viable method of contesting" state tax hearing procedures and noting that "[m]ere futility of state court proceedings does not allow a federal court to ignore the explicit prohibitions of Section 1341"). The focus is on the *procedural* sufficiency of state remedies, not their substantive outcomes. *Rosewell*, 450 U.S. at 512 (in past analyses of "plain, speedy and efficient" language from section 1341, "the Court has emphasized a *procedural* interpretation in defining both the entire phrase and its individual word components").

Under Illinois law, taxpayers dissatisfied with a decision of a county Board of Review have two options for appeal. They can either appeal to the Property Tax Appeal Board (PTAB), 35 Ill. Comp. Stat. § 200/16-160, or file a tax objection complaint directly with a county circuit court, § 200/23-15. See also

*Millennium Park Joint Venture, LLC v. Houlihan*, 948 N.E.2d 1, 10–11 (Ill. 2010). If they select the PTAB route, they can appeal the PTAB's decision directly to Illinois state courts. 35 Ill. Comp. Stat. § 200/16-195. Although the PTAB is not expressly authorized to consider claims beyond objections to assessment values, we have found no provision in its authorizing statute or regulations precluding it from doing so.[7] And before the PTAB, taxpayers may supplement the record with evidence beyond what was before the Board of Review. § 200/16-180 ("A party participating in the hearing before the Property Tax Appeal Board is entitled to introduce evidence that is otherwise proper and admissible without regard to whether that

---

[7] The regulations provide in part: "The Property Tax Appeal Board may consider appeals based upon contentions of law. Such contentions of law must be concerned with the correct assessment of the subject property. If contentions of law are raised, the party shall submit a brief in support of his position." 86 Ill. Admin. Code § 1910.65(d). The second sentence of that provision could be interpreted as allowing constitutional challenges to the Board of Review procedures used to determine the "correct assessment," or perhaps might be interpreted more narrowly. We have found no Illinois case law that would bar the PTAB from considering such challenges. We recognize that the Supreme Court has said on several occasions that uncertainty surrounding the scope of a state remedy "may make it less than 'plain.'" See *Rosewell*, 450 U.S. at 517, citing *Tully v. Griffin, Inc.*, 429 U.S. 68, 76 (1976) (dictum), citing in turn *Township of Hillsborough v. Cromwell*, 326 U.S. 620, 625 (1946) (state remedies were at best speculative where long line of state supreme court precedents barred effective relief). Whatever the scope of this uncertainty exception might be, any uncertainty surrounding the scope of the PTAB's powers could not overcome the federal-court barrier here because the state courts will ultimately have jurisdiction to hear and decide the constitutional challenges plaintiffs contemplate. See *Rosewell*, 450 U.S. at 517 ("There is no question that under the Illinois procedure, the court will hear and decide any federal claim.").

evidence has previously been introduced at a hearing before the board of review of the county.").

Thus, through either the PTAB or the circuit courts, any statutory or constitutional claims can be heard by a state court of general jurisdiction and can be appealed through the Illinois court system to the Illinois Supreme Court and the Supreme Court of the United States. In *Heyde* we found that these appeal procedures were adequate for *Fair Assessment* purposes, noting that we "have continually found that the available state procedures for challenging the Illinois tax system are acceptable" under *Fair Assessment*. 633 F.3d at 520 (collecting cases).

Despite these precedents, plaintiffs maintain that appeals through the PTAB and directly to the circuit courts are procedurally inadequate. They argue that the entire Cook County judiciary "could not adequately hear these specific cases" because the cases are highly political and "against the man who selected the majority of the county judiciary," referring to defendant Joseph Berrios. Pl. Supp. Br. 8. They refer to Berrios and his "cohorts on the Board of Review" as "corrupt 'Chicago-style' politicians" whose property tax decisions were so "brazenly and openly" political that "to expect the Cook County judiciary to treat [the decisions] as anything other than a political hot potato is naïve." *Id*. at 8–9.

The federal Constitution does not prohibit popular election of state court judges. Plaintiffs' argument amounts in essence to an argument that some issues and claims are, as a matter of federal constitutional law, simply too hot for elected state judges to handle fairly. To accept this theory would both accept an extraordinary expansion of federal power and

endorse a sweeping condemnation of the state judiciary. We reject plaintiffs' theory. Where there are corrupt or incompetent individuals, there are remedies. If plaintiffs find themselves before a Cook County circuit judge who they believe has too close ties to the Board, Illinois law provides a procedural mechanism to substitute judges. See 735 Ill. Comp. Stat. § 5/2-1001(a)(2)-(3), (c) (parties entitled to one substitution of a judge as matter of right and may request substitution for cause, possibly to different county). Thus, we see no procedural inadequacy with a direct appeal to the state courts: Illinois law provides ample opportunity for plaintiffs to receive a fair hearing before a Cook County circuit judge, and plaintiffs can appeal an adverse circuit court decision through the Illinois court system.

But plaintiffs did not appeal directly to the circuit courts. They chose instead the option of appealing to the PTAB. They argue that the PTAB also cannot provide a plain, adequate, and complete remedy because their cases with the PTAB were "red-flagged," will take too long to be decided, and will not be reviewed *de novo*, but rather that the PTAB will "rubber stamp" the Board's decisions. We are not persuaded.

First, significant delay does not doom the adequacy of state remedies. In *Heyde* we found that a delay of more than two years alleged by the plaintiff did not render Illinois procedures inadequate. 633 F.3d at 521. Relying on *Rosewell*, where the Supreme Court found that delays in Illinois tax appeals were not "outside the boundary" of a speedy remedy, 450 U.S. at 521, we held that, "while the delays in the Illinois system are unfortunate, this case fits within the parameters of [*Fair Assessment*] and our previous decisions." *Heyde*, 633 F.3d at

520–21. The same is true here. Briefing before the PTAB proceeded in a timely manner and was completed by late 2011. The parties now wait for a hearing to be scheduled. This is not the seven- to eight-year delay plaintiffs alleged in their complaints. Even if it is"unfortunate," it still falls within the range considered acceptable in *Rosewell* and *Heyde*. *Id*. at 521.

Second, plaintiffs allege that the PTAB is not an adequate state remedial process because their cases have been "red-flagged." In oral argument they explained that by "red-flagged" they mean that someone within the Board of Review has been in contact with the PTAB and that nothing would be done to change the Board's decisions. We do not know the factual basis for this allegation, but even if the PTAB affirms the Board's decisions and the plaintiffs can show that was because the cases were "red-flagged" or otherwise the subject of improper influence, further appeal to Illinois state courts will be available. See *Huber Pontiac*, 585 F.2d at 820–21 (availability of appeal through Illinois courts and ultimately Supreme Court of United States meant state remedies were plain, speedy, and efficient where plaintiff alleged that tax hearing officer was prejudiced by *ex parte* contacts with the state tax department). We cannot say that the appeal procedure through the PTAB is inadequate or incomplete because parties fear they may be dissatisfied with the process and ultimate outcome.

Plaintiffs also argue that PTAB review is not adequate because it is only a "rubber stamp" for the Board. Pl. Supp. Br. 5. They point to provisions of the relevant regulations that place the burden of proof on the appealing property owner and require parties to prove unequal treatment by "clear and convincing evidence." See 86 Ill. Admin. Code § 1910.63(e). By

law the PTAB is required to review appeals *de novo*. 35 Ill. Comp. Stat. 200/16-180 ("All appeals shall be considered de novo … ."); 86 Ill. Admin. Code § 1910.63(a) ("Under the principles of a de novo proceeding, the Property Tax Appeal Board shall not presume the action of the board of review or the assessment of any local assessing officer to be correct.").

The provisions plaintiffs cite do not address the standard of review but set out a burden-shifting procedure for PTAB appeals. Contesting taxpayers must first provide evidence or legal argument "sufficient to challenge the correctness of the assessment," and once they have done so, the Board is required to provide evidence or legal argument "sufficient to support its assessment." See 86 Ill. Admin. Code § 1910.63(b)–(c). Plaintiffs' argument confuses the *de novo* standard of review with the evidentiary burdens applicable in PTAB appeals. The fact that the plaintiffs bear an evidentiary burden does not render the PTAB appeal process inadequate or incomplete. The prospect that the PTAB's decisions on the merits of these plaintiffs' appeals might be wrong falls well short of any showing that state remedies are inadequate.

Even if these allegations about the adequacy and partiality of the PTAB and the Cook County circuit courts plausibly affected the adequacy of those processes, they are premature. Certainly, tax appeal procedures *exist* in Illinois, and we have repeatedly held that those procedures are adequate for purposes of *Fair Assessment* and the Tax Injunction Act. See *Heyde*, 633 F.3d at 520 (collecting cases). Plaintiffs' claim that facially adequate procedures will not function adequately in the future is premature. See, *e.g.*, *Williamson Cnty. Reg'l Planning Comm'n v. Hamilton Bank of Johnson City*, 473 U.S. 172,

195–97 (1985) (federal courts should abstain from considering challenges to state eminent domain proceedings if state remedies have not been exhausted, in part because the claims are not ripe as a prudential matter without state court exhaustion).

Thus, under *Fair Assessment*, the district courts in these cases were required to abstain from considering the merits of plaintiffs' claims for damages against the Board under section 1983 because the available state remedies were plain, adequate, and complete.

D. *Final Disposition*

Comity requires that the claims against the Board be dismissed without prejudice, *i.e.*, without a ruling on the merits. This ruling therefore should not bar plaintiffs from raising any federal constitutional issues in their state proceedings to appeal their property tax assessments. On this topic, we also note that the district court in *Capra* erred in applying too-stringent pleading requirements for a class-of-one equal protection claim. The court found that Capra did not state such a claim because he did not identify in his complaint similarly situated properties that were not subject to the same (allegedly improper) reductions.

Plaintiffs alleging class-of-one equal protection claims do not need to identify specific examples of similarly situated persons in their complaints. As we explained in *Geinosky v. City of Chicago*, 675 F.3d 743 (7th Cir. 2012):

> Even in a case where a plaintiff would need to identify a similarly situated person to prove his

> case, … we see no basis for requiring the plaintiff
> to identify the person in the complaint … . Rule
> 8(a)(2) requires only "a short and plain statement
> of the claim showing that the pleader is entitled
> to relief." Even the more demanding pleading
> requirements under *Iqbal* and *Twombly* do not
> require a plaintiff to identify specific compara-
> tors in a complaint.

*Id*. at 748 n.3. Here the plaintiffs alleged in *Satkar Hospitality* that "[s]imilarly situated property owners, who had not contributed to Rep. Froehlich, were not singled out thusly," Satkar Compl. ¶ 51, and in *Capra*, "[s]imilarly situated taxpay-ers who were not suspected of associating with Rep. Paul Froehlich were not denied the right to petition the Board of Review." Capra Compl. ¶ 41. At the pleading stage these allegations suffice.[8]

---

[8] We need not address the extent to which plaintiffs would need to provide evidence of near-exact similarly situated property owners after discovery. But the question is an open and interesting one, especially in light of *Swanson v. City of Chetek*, where we reversed summary judgment for a defendant and held that a "clear showing of animus, absent a robust comparison to a similarly situated individual, may sustain a class-of-one equal protection claim." 719 F.3d 780, 783, 785 (7th Cir. 2013) (where plaintiff "identified his specific harasser, provided a plausible motive and detailed a series of alleged actions by [the defendant] that appear illegiti-mate on their face").

III.  *Conclusion*

In the *Capra* appeal, No. 12-2540, we affirm the judgment. The claims against the  individual defendants are dismissed with prejudice, and the due process and equal protection claims against the Board of Review are dismissed without prejudice. In the *Satkar Hospitality* appeals, we affirm the judgment in favor of the individual defendants in No. 12-3116, and remand for dismissal of the claims against the Board of Review without prejudice in No. 12-2848.