In the

# United States Court of Appeals
## For the Seventh Circuit

No. 11-3572

SATKAR HOSPITALITY, INC.,
SHARAD DANI, and HARISH DANI,

*Plaintiffs-Appellants*,

*v.*

FOX TELEVISION HOLDINGS, *et al.*,

*Defendants-Appellees*.

Appeal from the United States District Court
for the Northern District of Illinois, Eastern Division.
No. 10 C 6682 — **Matthew Kennelly**, *Judge*.

ARGUED JUNE 4, 2013 — DECIDED SEPTEMBER 10, 2014

Before FLAUM, SYKES, and HAMILTON, *Circuit Judges*.

SYKES, *Circuit Judge*. Sharad Dani and his son Harish Dani own and operate a hotel in Schaumburg, Illinois, through their company Satkar Hospitality, Inc. In this suit they allege that a political blog and a local television station defamed them by reporting a possible link between their political donations and

a successful property-tax appeal. The Danis and their company were among those mentioned in blog posts and a television news report as having made a large donation to a local politician and later won a property-tax appeal. In response to this reporting, the Cook County Board of Review revoked Satkar's property-tax reduction and opened an inquiry into the allegations.

Satkar and the Danis (collectively, "Satkar") sued the Board, its members and staff, the blog, the television station, and several reporters, asserting claims under 42 U.S.C. § 1983 for violation of their constitutional rights and state-law claims for defamation and false light. The district court dismissed the § 1983 claims against the Board and the public officials, and we affirmed that decision in an earlier opinion. *See Capra v. Cook Cnty. Bd. of Review*, 733 F.3d 705 (7th Cir. 2013).

In a separate order, the district court also dismissed the state-law claims against the media defendants, applying the Illinois Anti-SLAPP statute. Because the § 1983 claims were then still pending, the judge entered final judgment under Rule 54(b) of the Federal Rules of Civil Procedure to permit a separate appeal of the SLAPP issue. A week later, with the appellate clock already ticking, the judge orally invited Satkar to ask for a Rule 54(b) judgment on the SLAPP dismissal, apparently forgetting that he had already entered final judgment. Satkar did nothing to correct the court's misapprehension; it did not seek clarification, remind the judge that judgment was already entered, or file a notice of appeal. Instead, after the deadline to appeal expired, Satkar moved for an extension of time, claiming that the judge's comment

created confusion. The judge accepted this explanation and granted the extension, apparently relying on the defunct "unique circumstances" doctrine. This appeal followed.

The Supreme Court has disavowed the unique-circumstances doctrine, and Satkar has not otherwise demonstrated excusable neglect for missing the appeal deadline. The appeal is untimely and must be dismissed for lack of appellate jurisdiction.

## I. Background

The case was dismissed on the pleadings, so we take the following facts from Satkar's complaint, accepting them as true. Satkar owns and operates a Wingate by Wyndham hotel in Schaumburg. In 2007 Satkar appealed its property-tax assessment to the Cook County Board of Review, which has jurisdiction over appeals of property-tax assessments rendered by the Cook County Assessor's Office. The appeal was successful. The Board lowered the valuation of the hotel, saving Satkar more than $40,000 in property taxes.

Two years later, allegations surfaced that Illinois State Representative Paul Froehlich was engineering successful Board appeals for his constituents in return for large campaign contributions. The *Illinois Review*, a conservative blog, and the Chicago Fox TV affiliate WFLD ran stories identifying Satkar as one of these constituents. They reported that Satkar gave Froehlich free hotel rooms for his campaign workers and later won its tax appeal. The reports were sourced to a disgruntled former employee of Representative Froehlich. Although the

blog and television reports did not use the word "bribery," the implication was clear enough. Satkar denies any involvement in the alleged bribery scheme.

The Board of Review responded to the media reports by requiring Satkar to appear and answer questions regarding its relationship with Froehlich. The Board specifically invited WFLD to this closed-door hearing and proceeded to "pander" to the Fox affiliate. The Board then "arbitrarily rescinded" its earlier decision to reduce Satkar's property appraisal, which increased Satkar's property-tax assessments for tax years 2007–2009. Moreover, as a result of the reports on the *Illinois Review* blog and WFLD television, Satkar suffered reputational damage and lost business. Finally, the Board initiated an internal review of the pay-for-play allegations, and the State's Attorney opened an investigation.

Satkar filed suit in federal court against the Board of Review, its members and staff, the *Illinois Review*, WFLD, and several reporters and producers employed by the media defendants, asserting claims under § 1983 against the public defendants and state-law claims for defamation and false light against the media defendants. This appeal involves only the claims against the media defendants. As we've noted, the § 1983 claims were resolved in our earlier opinion in *Capra v. Cook County Board of Review*, 733 F.3d 705. In a nutshell, we affirmed the district court's dismissal of the claims against the Board of Review and the public officials, although we adjusted the judgment in certain respects to reflect that the dismissal was without prejudice. *See id.* at 718.

Central to Satkar's case against the media defendants is the Illinois Citizens' Participation Act, or "Anti-SLAPP Act," 735 ILL. COMP. STAT. 110, a law aimed at curbing so-called "Strategic Lawsuits Against Public Participation," *id.* § 110/5. SLAPPs are lawsuits deployed to deter citizens from exercising their political rights by burdening them with expensive litigation. The point of a strategic lawsuit is not necessarily to win it, but rather to impose litigation costs. Under the normal rules of civil procedure, even a meritless lawsuit can survive to the summary-judgment stage, requiring expensive discovery and motion practice. The point of anti-SLAPP laws is to allow defendants in strategic lawsuits to win early dismissal before substantial litigation costs are incurred.

More specifically, the Illinois Anti-SLAPP Act applies to

> any motion to dispose of a claim in a judicial proceeding on the grounds that the claim is based on, relates to, or is in response to any act or acts of the moving party in furtherance of the moving party's rights of petition, speech, association, or to otherwise participate in government.

*Id.* § 110/15. The Act extends immunity to "[a]cts in furtherance of" these rights, "regardless of intent or purpose, except when not genuinely aimed at procuring favorable government action, result, or outcome." *Id.* Claims to which the Act applies must be dismissed unless the plaintiff produces "clear and convincing evidence that the acts of the moving party are not immunized from, or are not in furtherance of acts immunized from, liability by this Act." *Id.* § 110/20(c).

The media defendants moved to dismiss Satkar's complaint under Rule 12(b)(6), invoking the immunity provided by the Act. The district court denied the Rule 12(b)(6) motion but indicated that the defendants could reassert their Anti-SLAPP Act defense in a procedurally proper post-answer motion. They answered and moved for judgment on the pleadings under Rule 12(c).

By written decision dated September 21, 2011, the court granted the motion. The judge first rejected Satkar's constitutional challenges to the Act, holding that the void-for-vagueness doctrine does not apply in this context and the Act does not violate the right to privacy or the right to access the courts. The judge then held that the Act barred Satkar's claims against the *Illinois Review* and WFLD defendants. The defamation and false-light claims, the judge reasoned, were based on the media defendants' news reports, which were directed at the public and addressed the subject of political corruption, a matter of public concern. As such, the defendants' actions were in furtherance of their right to free speech and enjoyed immunity under the Act. Finally, Satkar had not shown that the conduct of the media defendants was not genuinely aimed at procuring favorable government action, which might have taken the claims outside the immunity provided by the Act.

The judge thus dismissed all claims against the media defendants with prejudice and awarded attorney's fees as provided in the Act. Although the § 1983 claims against the Board and the public officials were still pending, the judge found no just reason for delay and directed the clerk to enter judgment for the media defendants under Rule 54(b). That

same day—September 21, 2011—the court entered final judgment in favor of the *Illinois Review*, WFLD, and their reporters and producers. The judge's Rule 54(b) findings and entry of judgment are clearly reflected in the case docket, in the judge's written orders, and in a written Rule 54(b) final judgment.

This action started the appeal time clock. Satkar's deadline to file a notice of appeal was October 21, 2011—30 days after the entry of judgment. *See* FED. R. APP. P. 4(a)(1)(A). At a status hearing on September 27, however, the judge asked the parties "whether anybody is going to ask me for a 54(b) finding" on the Anti-SLAPP Act issue, apparently forgetting that he had already made a Rule 54(b) finding and entered final judgment for the media defendants. The judge signaled that he "would probably give" the parties a Rule 54(b) finding, but told them not to "wait too long" to ask for it. Satkar did not remind the judge that he had already entered a Rule 54(b) judgment. The judge then scheduled the next status conference for November 3 for the purpose of setting a schedule for the § 1983 claims against the Board and the public officials.

The October 21 appeal deadline came and went. Satkar did not file a notice of appeal, request clarification, or take the judge up on his oral invitation to request a Rule 54(b) finding, which was unnecessary in any event because judgment had already been entered. Instead, on November 4—two weeks after the October 21 appeal deadline expired and five weeks after the judge's mistaken comment on September 27—Satkar moved for an extension of time to appeal. The motion asked "that the decision of September 21, 2011[,] be modified to allow

Plaintiffs to file a proper and timely Notice of Appeal." Satkar acknowledged that "[t]he Order of September 21, 2011, … already contained the 54(b) language," but explained that it had "understood the [c]ourt's instruction on September 27, 2011[,] as in variance of the Order on September 21, 2011." The media defendants responded that Satkar had not established excusable neglect for missing the October 21 deadline to appeal.

At a hearing on November 9, 2011, the judge granted Satkar's motion to extend the appeal time. The judge acknowledged that he might have "created some level of confusion" on September 27 when he told the parties that he would probably issue a 54(b) finding if they asked for one. He "evidently forgot" that he had already issued that finding and entered final judgment. The judge reasoned:

> [T]here's authority, and I couldn't put my hands on it, but there is authority in a slightly different context that when a district judge … misleads a party into thinking that they don't need to do something or they do need to do something, sort of from an equitable standpoint, people are sort of allowed to rely on what judges say, I guess. And I think this is an appropriate case for that.

The judge also said that there hadn't been "an extraordinarily long amount of delay here." The judge gave Satkar 24 hours to file a notice of appeal. Satkar filed its notice of appeal that same day.

## II. Discussion

"[T]he timely filing of a notice of appeal in a civil case is a jurisdictional requirement." *Bowles v. Russell*, 551 U.S. 205, 214 (2007); *see also Fairley v. Andrews*, 578 F.3d 518, 521 (7th Cir. 2009) (citing 28 U.S.C. § 1291) (explaining that appellate jurisdiction requires "a final judgment and a timely notice of appeal"); *Reinsurance Co. of Am. v. Administratia Asigurarilor de Stat* (*Admin. of State Ins.*), 808 F.2d 1249, 1251 (7th Cir. 1987) ("The timely filing of a notice of appeal is, of course, mandatory and jurisdictional."). To be timely, a notice of appeal must be filed within 30 days after a final judgment is entered. 28 U.S.C. § 2107; FED. R. APP. P. 4(a)(1)(A). This includes appeal from a final judgment entered on "one or more, but fewer than all, claims or parties" pursuant to a Rule 54(b) finding that there is "no just reason for delay." FED. R. CIV. P. 54(b).

A district court may grant a motion for extension of the time to appeal if the moving party "shows excusable neglect." FED. R. APP. P. 4(a)(5).[1] While Rule 4(a)(5) "does not define what constitutes excusable neglect," the term "was intended to be narrowly construed." *Reinsurance Co. of Am.*, 808 F.2d at 1251. A motion to extend the time to appeal must be filed "no later than 30 days" after the expiration of the deadline set by Rule 4(a). FED. R. APP. P. 4(a)(5)(A)(i). We review the district court's order granting an extension of time for abuse of discretion. *Reinsurance Co. of Am.*, 808 F.2d at 1251.

---

[1] The rule also allows for extensions upon a showing of "good cause," but Satkar does not invoke that ground here so we do not consider it.

The excusable-neglect standard is a strict one; "few circum-stances will ordinarily qualify." *Id.* The excusable-neglect standard "refers to the missing of a deadline as a result of such things as misrepresentations by judicial officers, lost mail, and plausible misinterpretations of ambiguous rules." *Prizevoits v. Ind. Bell Tel. Co.*, 76 F.3d 132, 133–34 (7th Cir. 1996). The excusable-neglect standard "can never be met by a showing of inability or refusal to read and comprehend the plain language of the federal rules." *Id.* at 133 (quoting *In re Cosmopolitan Aviation Corp.*, 763 F.2d 507, 515 (2d Cir. 1985)). The standard is equitable,

> taking into consideration relevant circumstances, including (1) the danger of prejudice to the non-moving party; (2) the length of the delay and its impact on judicial proceedings; (3) the reason for the delay (i.e., whether it was within the reasonable control of the movant); and (4) whether the movant acted in good faith.

*Sherman v. Quinn*, 668 F.3d 421, 425 (7th Cir. 2012) (quoting *McCarty v. Astrue*, 528 F.3d 541, 544 (7th Cir. 2008)).

The first and second factors—the length of delay and prejudice to the opposing party—do little analytical work in this context and thus are rarely dispositive. The time limit for requesting an extension is quite short—not later than 30 days after the deadline expires—so there will never be a long delay, and the short time frame keeps the risk of prejudice low. *Id.* at 426; *Prizevoits*, 76 F.3d at 134. We have explained that "[t]he word 'excusable' would be read out of the rule if inexcusable neglect were transmuted into excusable neglect by a mere

absence of harm." *Prizevoits*, 76 F.3d at 134. Here, the district court's conclusion that Satkar's delay was not "an extraordinarily long amount of time" is not a sufficient justification for an extension.

Most important is the reason for the delay. To establish excusable neglect, the moving party must demonstrate genuine ambiguity or confusion about the scope or application of the rules or some other good reason for missing the deadline, in addition to whatever lack of prejudice and absence of delay he can show. *See id.* Satkar did not do that here.

Satkar does not dispute that it knew the court had entered a final, appealable judgment on September 21. Its case for excusable neglect turns entirely on the judge's comments on September 27. The judge was clearly sympathetic, saying that he might have "created some level of confusion," and "from an equitable standpoint," Satkar was "sort of allowed to rely on" what the court said. The judge's willingness to take the blame doesn't justify extending the time to appeal. First, and most importantly, the law doesn't allow the court's misstatement to serve as a basis on which to extend the appeal deadline. Second, the record reflects that Satkar did not in fact rely on what the judge said at the September 27 hearing.

Although the judge couldn't put his finger on the equitable doctrine he was applying, his reasoning makes it clear that he was referring to the defunct unique-circumstances doctrine, which formerly operated as "[a]n apparent exception to th[e] otherwise strict application of the 30-day appeal period." *Reinsurance Co. of Am.*, 808 F.2d at 1252. The doctrine was based on a sort of estoppel theory:

> [A] petitioner's justifiable and ultimately detri-
> mental reliance on a district court ruling granting
> the petitioner an extension of time in which to
> appeal amount[s] to "unique circumstances"
> when the court of appeals later reversed the
> district court, leaving petitioner without recourse
> to either the expired 30–day time period or the
> extension of time the district court had granted.

*Id.*

More generally, "unique circumstances" for an extension of time would be found to exist "where a party has performed an act which, if properly done, would postpone the deadline for filing his appeal and has received specific assurance by a judicial officer that this act has been properly done." *Osterneck v. Ernst & Whinney*, 489 U.S. 169, 179 (1989); *see also Thompson v. INS*, 375 U.S. 384, 398–99 (1964) (per curiam) (finding that an assurance by the district court that a posttrial motion had been timely and thus extended the time for appeal was a "unique circumstance" allowing appeal to be heard even if the motion in truth had been untimely and would not have extended time for appeal); *Harris Truck Lines, Inc. v. Cherry Meat Packers, Inc.*, 371 U.S. 215, 217 (1962) (per curiam) ("In view of the obvious great hardship to a party who relies upon the trial judge's finding of 'excusable neglect' prior to the expiration of the 30-day period and then suffers reversal of the finding, it should be given great deference by the reviewing court.").

Our circuit took a "narrow view" of this doctrine; we said it was "available *only* when there is a genuine ambiguity in the rules to begin with, and the court resolves that ambiguity in

the direction of permitting additional time to appeal." *Props. Unlimited, Inc. Realtors v. Cendant Mobility Servs.*, 384 F.3d 917, 922 (7th Cir. 2004) (emphasis added). In that limited situation, the party relying on the judicial pronouncement had the equities on his side.

But the Supreme Court brought an end to the unique-circumstances doctrine in *Bowles v. Russell*, 551 U.S. 205 (2007), overruling *Thompson* and *Harris Truck Lines*: "Because this Court has no authority to create equitable exceptions to jurisdictional requirements," the Court explained, "use of the 'unique circumstances' doctrine is illegitimate." *Id.* at 214. So even if Satkar could show the kind of reliance that the doctrine required, an extension of time is legally unavailable on this ground.

Moreover, Satkar hasn't shown that it actually relied on what the district court said. It's undisputed that Satkar knew the court had entered a Rule 54(b) final judgment on September 21, so it cannot claim to have been genuinely confused when the judge misstated the record a week later. When the judge invited a request for a Rule 54(b) finding on September 27—mistakenly, as Satkar admits it knew at the time—Satkar's counsel did nothing to correct the court's misapprehension or otherwise clear up the confusion. The appeal clock was already running, but Satkar let the deadline pass, waiting until after the next status conference to move for an extension of time and blaming its own neglect on confusion supposedly created by the judge.

That's not excusable neglect; it is instead an attempt to seek refuge in a momentary memory lapse by a busy judge juggling

a heavy caseload. Satkar points out that waiting until after the appeal deadline has passed to request an extension is not automatically a bar to appeal. That's true. Rule 4(a)(5) explicitly contemplates a motion for extension of time after the 30-day period has run. And the extension rule is not confined to "circumstances beyond the control of the filer." *Prizevoits*, 76 F.3d at 134 (quotation marks omitted) (explaining that "plausible misinterpretations" and "'confusion' concerning the scope of the applicable rule" can constitute excusable neglect in appropriate cases). But an extension of time requires a *reason*, not just a request for a favorable exercise of discretion. The rule requires *excusable* neglect, after all—not just plain neglect—and Satkar offered no basis for an extension other than the judge's mistaken September 27 comment.

Because the district court granted an extension of time based on an overruled legal doctrine, and the record supports no other basis for a finding of excusable neglect, Satkar's notice of appeal was untimely. The appeal must be dismissed for lack of jurisdiction.[2]

APPEAL DISMISSED.

---

[2] The Illinois Supreme Court issued an important decision on the scope of the Anti-SLAPP Act after the district court entered judgment in this case. *See Sandholm v. Kuecker*, 962 N.E.2d 418 (Ill. 2012). We express no opinion on the merits.